Jon Schuyler Brooks (JB 7218)
jbrooks@phillipsnizer.com
Jeremy D. Richardson (JR 7706)
jrichardson@phillipsnizer.com
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Defendants
Thomas O. Begley, Thomas O. Begley & Associates,
Stephan J. Lovett and Hartsfield Capital Group

UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| DOVER LIMITED, | : | |
| | : | **ECF CASE** |
| Plaintiff, | : | ELECTRONICALLY FILED |
| | : | Docket No. 08 CV 1337 |
| v. | : | (LTS)(JCF) |
| | : | |
| ALAIN ASSEMI, HARTSFIELD CAPITAL | : | **NOTICE OF MOTION TO** |
| SECURITIES, INC., HARTSFIELD CAPITAL GROUP, | : | **DISMISS THE COMPLAINT** |
| STEPHEN J. LOVETT, JOHN H. BANZHAF, DELBERT | : | **PURSUANT TO F.R.C.P.** |
| D. REICHARDT, MANSELL CAPITAL PARTNERS, | : | **12(b)(2), (3) and (6), or TO** |
| LLC, THOMAS O. BEGLEY, THOMAS O. BEGLEY & | : | **TRANSFER VENUE** |
| ASSOCIATES, T.J. MORROW and TJ MORROW PC, | : | **PURSUANT TO 28 U.S.C.** |
| | : | **§1404(a)** |
| Defendants. | : | |

------------------------------------------------------------------------x

  PLEASE TAKE NOTICE THAT the Defendants, Thomas O. Begley, Thomas O. Begley

& Associates, Stephan J. Lovett and Hartsfield Capital Group (the "Moving Defendants"), move

the Court for an Order: (a) dismissing plaintiff's complaint pursuant to (i) F.R.C.P. 12(b)(2) for

lack of personal jurisdiction; (ii) F.R.C.P. 12(b)(6) for failure to state a claim upon which relief

can be granted, and (iii) F.R.C.P. 12(b)(3) for improper venue; or alternatively (b) transferring

venue pursuant to 28 U.S.C. §1404(a), upon the accompanying affidavits of Thomas O. Begley

and Stephan J. Lovett, plaintiff's complaint (copy attached hereto as Exhibit A), and the memorandum of law in support of the motion.

Please take further notice that pursuant to stipulation among counsel, So Ordered by the Court, any opposing affidavits and answering memoranda shall be served on or before July 14, 2008, and reply affidavits and memoranda shall be served on or before July 28, 2008.

Pursuant to Rule 2(B) of Judge Swain's individual rules, counsel for the parties attempted in good faith to resolve and narrow the scope of the disputes raised by this motion.  Counsels' attempts included several telephone conversations, exchange of e-mails and Moving Defendants' counsel sending a letter to plaintiff's counsel explaining the bases for its motion.  While the communications were cordial and constructive, these disputes could not be resolved. Accordingly, this motion is being filed.

Dated:  New York, New York
          June 13, 2008

                                    PHILLIPS NIZER LLP


                                    __s/ Jeremy Richardson_____
                                    Jon Schuyler Brooks (JB 7218)
                                    Jeremy D. Richardson (JR 7706)
                                    Attorneys for Defendants
                                    Thomas O. Begley, Thomas O. Begley & Associates
                                    Stephan J. Lovett and Hartsfield Capital Group
                                    666 Fifth Avenue
                                    New York, New York 10103-0084
                                    (212) 977-9700

To:     Law Office of Thomas M. Mullaney
        Attorneys for the Plaintiff
        708 Third Avenue, Suite 2500
        New York, New York 10017
        (212) 223-0800

        Eisenberg Tanchum & Levy
        Attorneys for the Defendants
        John H. Banzhaf, Delbert D. Reichardt and
        Argosy Capital Securities, Inc. (f/k/a Hartsfield Capital Securities, Inc.)
        675 Third Avenue, Suite 2900
        New York, New York 10017
        (212) 599-0777

        Mr. TJ Morrow
        2501 Blue Ridge Road, Suite 150
        Raleigh, North Carolina 27607
        (919) 863-4328

        Mr. Alain Assemi
        15650 Vinyard Blvd. STE A131
        Morgan Hill, California 95037

1047013.1

LAW OFFICES OF THOMAS M. MULLANEY
THOMAS M. MULLANEY
708 Third Avenue, Suite 2500
New York, New York, 10017
Tel. (212) 223-0800
Fax: (212) 661-9860
Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DOVER LIMITED,

          Plaintiff,

      v.

Alain Assemi, Hartsfield Capital Securities, Inc.,
Hartsfield Capital Group, Stephen J. Lovett,
John H. Banzhaf, Delbert D. Reichardt,
Mansell Capital Partners, LLC., Thomas O. Begley,
Thomas O. Begley & Associates, T. J. Morrow,
and TJ Morrow PC,

          Defendants.

------------------------------------------------------------X

**08 CV 1337**

Case No.

**COMPLAINT**

      Plaintiff Dover Limited (hereinafter "Plaintiff") file this Complaint against Defendants Alain

Assemi, Hartsfield Capital Securities, Inc., Hartsfield Capital Group, Stephen J. Lovett, John H.

Banzhaf, Delbert D. Reichardt, Mansell Capital Partners, LLC, Thomas O. Begley, Thomas O. Begley

& Associates, T J Morrow, and TJ Morrow PC for engaging in a well scripted scheme to steal millions

of dollars from it. Left with no alternative, Plaintiff has filed this lawsuit and would respectfully show

as follows:

1

## I. **THE PARTIES**

1.      Plaintiff Dover Limited is a Hong Kong company with its principal place of business located at 1 Scotts Road, #16-03 Shaw Centre, Singapore 228208.

2.      Defendant Assemi is an individual residing at 15650 Vineyard Boulevard, Suite A131, Morgan Hill, California 95037.

3.      Defendant Hartsfield Capital Securities, Inc. is a Georgia corporation whose principal place of business is located at 3775 Mansell Road, Alpharetta, Georgia 30032.

4.      Defendant Hartsfield Capital Group is a Georgia corporation whose principal place of business is located at 3775 Mansell Road, Alpharetta, Georgia 30022.

5.      Stephen J. Lovett is an individual who is a Georgia citizen upon information and belief., who can be served at 3775 Mansell Road, Alpharetta, Georgia 30022.

6.      John H. Banzhaf is an individual who is a Georgia citizen upon information and belief who can be served at 3775 Mansell Road, Alpharetta, Georgia 30022.

7.      Delbert D. Reichardt is an individual who is a Georgia citizen upon information and belief who can be served at 3775 Mansell Road, Alpharetta, Georgia 30022.

8.      Thomas O Begley is an individual who is a Georgia citizen residing at 570 Clarinbridge Way, Alpharetta, Georgia 30022

9.      Thomas O Begley & Associates is, upon information and belief, a Georgia Corporation with its principal place of business located at 570 Clarinbridge Way, Alpharetta, Georgia 30022.

10.     Defendant T. J. Morrow ("Morrow") is an individual residing at 2501 Blue Ridge Road, Suite 150, Raleigh, North Carolina 27607.  Morrow can be served at his business office, TJ Morrow & Associates, now located at 110 Wall Street, New York, NY 10053.

11.    TJ Morrow PC is a New York professional corporation whose principal place of business is now located at 110 Wall Street, New York, NY 10053.

## II. JURISDICTION AND VENUE

12.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332 because there is complete diversity of citizenship between Plaintiff and Defendants.  Plaintiff Dover is a Hong Kong Corporation with its principal place of business located in Singapore.  None of the defendants is incorporated in, reside in or have their principal place of business in Hong Kong nor Singapore.  Thus, complete diversity of citizenship exists between the plaintiffs and defendants.  The amount in controversy also exceeds $75,000.  Based on the diversity of citizenship and the amount in controversy, this Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332.

13.    Venue is proper in the Southern District of New York because all or part of the factual events that occurred in this case arose in the Borough of Manhattan, New York, New York.

## III.    BACKGROUND FACTS – DEFENDANTS' SCHEME

A.    **The Hartsfield Theft**

14.    Plaintiff's initial introduction to Hartsfield occurred in June of 2003, and it was made by an individual who has devoted himself, successfully, to a career of fraud and Ponzi schemes.  Dover and its Director, Ms. Wendy Sui Cheng Yap, had the profound misfortune of being ensnared by Defendant Assemi in 2003, when he referred Dover to a company called A.B. Watley, Inc ("Watley") to invest its funds.  Although Defendant Assemi held himself out as an investment professional, and provided investment advice to Dover, he holds no licenses as an investment professional.

15.    Only days after Dover entrusted $10,000,000 to Watley, Watley stole $3,000,000 from Dover to cover a bad "short" trade made by its chief proprietary trader Jay Amore, now a convict and

cooperating witness against other Watley employees in the so-called "Squawk Box" case in the Eastern District of New York.

16.    Knowing full well that Watley had stolen those funds from Dover, having actually approved it according to Jay Amore in trial testimony, Defendant Assemi told Dover's Ms. Yap a very different story, saying it was still available, and that records showing a loss were a computer glitch, and the like.

17.    Defendant Assemi then professed shock that Watley had treated Dover this way, and referred her to another trading firm called Hartsfield Capital Securities ("Hartsfield"), the broker-dealer of Defendant Hartsfield Capital Group ("Hartsfield Group"). Defendant Assemi claimed to know Hartsfield's Thomas O. Begley ("Begley"), and to know that he was a successful investor. Regrettably, Dover again took Defendant Assemi's advice, and invested the $6.75MM with Hartsfield that Watley had not stolen. In a litigation that Dover instituted in this Court, Defendants Watley and Assemi entered into Settlement Agreements with Dover, on which they both promptly defaulted. Dover is actively pursuing judgment collection efforts against Watley, and its parent A.B. Watley Group, Inc.

18.    To win Dover's business, Hartsfield claimed that it had substantial experience in foreign and domestic project financing ventures, and that these financing ventures had been highly financially profitable to its clients. One such business venture discussed with Plaintiff was investing with Mansell Capital Partners ("Mansell"), a project finance vehicle managed and directed by Hartsfield and incorporated by Hartsfield Group as a "single purpose investment vehicle." Assemi also falsely represented that his company, Elfort Company, S.A., was a subsidiary of Hartsfield and Mansell. Mansell in turn made its investments through secured short-term bank and corporate notes, or so Dover was told. These notes were purportedly purchased at substantial discounts and re-sold for a profitable

4

return. These false claims were made by Defendants Assemi, Defendant Stephan Lovett, the President of Hartsfield Group, and John H. Banzhaf ("Banzhaf") as President of Hartsfield.

19.    Hartsfield and Assemi also claimed that the investments were extremely secure, in fact describing the investment as being in a "non-depletion account," because they were not only in short term AA-rated notes, issued by AA-rated institutions, but that the account was backed by a $25MM fidelity bond. No such fidelity bond existed.

20.    . Defendants Lovett, Banzhaf and Reichardt also tried to further legitimize the financing deals to Plaintiff by claiming that Hartsfield and its employees invested in the same business ventures where they would invest Plaintiff's money. That claim of Hartsfield and its employees were false.

21.    According to Hartsfield, the length of time that Plaintiff participated in the investment projects would remain Plaintiff's decision alone. Plaintiff was not required to maintain any weekly, monthly, or yearly balance. In fact, Hartsfield agreed that Plaintiff could request the return of all or some of her principal on a moment's notice. That representation by Hartsfield and Defendant Begley was false.

22.    After accepting Dover's funds on July 16, 2003, Hartsfield Group suddenly encountered "delays" in finding investments, as obliquely claimed by Stephan Lovett, also described as Hartsfield Group's President. After negotiation, Hartsfield agreed to return $2.5MM of Dover's money, and then introduced another investment program to entice Dover and keep the remaining $4.25MM.

23.    This time Dover's funds would be held in Hartsfield Capital Group's "attorneys insured escrow account," pending deployment to the Mansell Capital Partners account when an appropriate project finance opportunity becomes available, and only with Dover's approval. That representation was false.

5

24.    Plaintiff's director came to the United States in October 2003 to visit Hartsfield's office. During the visit, she met many of Hartsfield's employees and officers. They discussed investments, business opportunities and other related matters with Ms. Yap. Hartsfield again stressed that the safety of its investments, the experience of its people, and the principal guarantee were reasons why Plaintiff should stay invested with Hartsfield. Hartsfield officers Begley, Lovett, and Banzhaf also represented that they personally were managing Plaintiff's investment projects.

25.    In November 2003, Plaintiff notified Hartsfield that it needed a partial return of principal because of unforeseen business issues. Initially, Plaintiff requested that two million be transferred to its account, but it later reduced the amount to one million. That one million dollars was transferred in December 2003. Plaintiff's remaining balance with Hartsfield was then approximately $3,250,000.

26.    Hartsfield continued to promise it could generate significant profits with Plaintiff's remaining $3.25MM. According to Hartsfield, Plaintiff's money was now supposed to be invested in a $100 MM financing venture, and Plaintiff was to receive at least a 30% return on her investment.

27.    In early January 2004, Hartsfield sought to convince Plaintiff that it was generating significant profits on Plaintiff's money. At that time, Banzhaf sent approximately $97,000 to Plaintiffs -- representing that the funds were profits generated by the Hartsfield deals. Defendants Hartsfield/Mansell/Banzhaf also paid $1,498,387 to Plaintiff in "interest." Given the disposition of the funds, those payments were simply a return of Dover's principal, in classic Ponzi scheme fashion.

28.    In July 2004, Plaintiff met with Defendant Begley and other Hartsfield employees in New York, at the Tribeca Grand hotel. During the meeting, Hartsfield and Begley repeatedly stressed that Plaintiff's money was secure and substantial returns were being generated from her investments. Begley stressed that if Plaintiff continued investing with Hartsfield, additional profits would be distributed to plaintiff. Hartsfield also took this time in New York to pitch new business to Plaintiff. Hartsfield

6

wanted Plaintiff to not only invest in more funds, but Hartsfield also attempted to convince Plaintiff to set up introductions with Plaintiff's Director's wealthy contacts and friends in Singapore. Hartsfield again stressed that any new investments from those friends would have principal protection like Plaintiff's prior investments.

29.     Not long after the July 2004 New York meeting, Plaintiff informed Hartsfield that she needed $1.5MM of her money.   Begley responded the next day, telling Plaintiff "I will have it taken care of." Two weeks later, Plaintiff contacted Begley again, telling him the $1.5MM was needed but not yet received. This time, Begley claimed it was a minor technicality that had caused the problem. Begley again promised that the money would be coming shortly.

30.     When the money had not arrived by the end of September, Plaintiff again stressed to Hartsfield the necessity of having some of her invested funds returned. Begley and Hartsfield again claimed the funds would be transferred to Plaintiff.  On October 18th, Begley went so far as to say $1.5MM would be transferred the following day. This back and forth, with Plaintiff requesting that the money be returned, and getting only excuses in return, continued for months. Plaintiff requested its funds on: (i) November 16, 2004; (ii) December 13, 2004; (iii) February 18, 2005; (iv) March 1, 2005; (v) April 21, 2005; (vi) June 7, 2005; (vii) August 19, 2005; (viii) September 19, 2005; (ix) September 29, 2005; and (x) October 11, 2005. Each time Plaintiff requested the funds, Hartsfield stated that the funds would be coming shortly. Over the course of several months, the Hartsfield employees named as defendants all repeated this claim, falsely.

31.     Eventually, Hartsfield began telling Plaintiff that the money under its trust and control had been stolen by an unscrupulous lawyer in Canada. Defendant Begley had previously represented that this attorney, William Kerr, was Hartsfield's attorney. To attempt to show that Dover's funds were

insured, after Hartsfield had Dover's funds, Defendant Begley had previously provided an expired certificate of Kerr's malpractice insurance.

32.     Dover's Ms. Yap challenged Mr. Begley's proffer, noting that it was inconsistent with Defendant Lovett's promise that insurance on the fund was in place. No evidence of that insurance or a fidelity bond was provided however.

33.     Hartsfield still claimed Plaintiff would be repaid the money. In fact, on February 18, 2005 Defendant Banzhaf claimed that a Letter of Credit was in place which would secure repayment to Dover. This representation was false.

34.     Hartsfield further failed to explain to Dover how the funds earmarked for investment exclusively in AA-rated bank notes were instead entrusted to Mr. Kerr. Nor did Hartsfield reveal that the investment of Dover's funds was actually only on the basis of Hartsfield's close relationship with an individual apparently named Gordon Mascarenhas, an Ontario businessman who claimed that Kerr could pay an extraordinary rate of interest "against" funds held in his insured trust account.

35.     Mr. Kerr eventually claimed that this insured trust account was allegedly in an unnamed bank in Spain. The funds in this account have never resurfaced.

36.     Incredibly, on August 31, 2005 Defendant Begley wrote on Hartsfield Group letterhead that Mansell had Dover's $3.25MM in its custody, apparently reflecting Dover's remaining $1,751,613 in principal, and the due interest. That representation was false.

37.     In September 2005, Hartsfield Executive Vice President Del Reichardt wrote to Dover's Ms. Yap, carbon copying Defendant Lovett, stating that "[w]e are very mindful of our obligation to you" and that they were moving forward with a "new program" that would "reduce our outstanding obligation to you." Defendant Reichardt did not address Dover's queries about the alleged insurance for the

investment, nor its queries about whether he and Defendant Banzhaf had in fact personally "invested" with Kerr as Hartsfield previously claimed.

38.    Also in September 2005, Plaintiff requested from Defendant Lovett a copy of the insurance policy that Hartsfield had previously told Plaintiff protected its funds. No evidence of such a policy or fidelity bond was ever provided.

39.    Ever audacious, on April 22, 2006 Defendant Begley again claimed on Hartsfield Group letterhead that Mansell was holding Dover funds in the amount of $3.25MM. This claim was false.

40.    Concomitant with his false statements about Dover's funds, Begley began orchestrating another fraudulent scheme to steal even more money from Plaintiff. To effectuate this fraudulent scheme, Defendant Begley enlisted the assistance of Hartsfield's New York lawyer and agent, Defendant Morrow.

### A.    The Begley-Morrow Theft

41.    Defendant Begley, proclaiming his independence from Hartsfield and sorrow over the loss of Plaintiff's funds, proposed that a new business be formed which would purchase term-life insurance policies at less than face value and collect the distributions at a later date. Begley also claimed that he and his new entity, Thomas O. Begley & Associates, would use this new business venture to pay back the $3.25 MM that Hartsfield had previously "borrowed" from Plaintiff. Hartsfield also acknowledged its obligation to re-pay Plaintiff her $3.25MM as well, and that Begley's willingness to assume that debt did not extinguish Hartsfield's obligation.

42.    To start the business, Begley represented that a working capital loan of $900,000 was necessary. He also introduced a new person into the scheme, T.J. Morrow. Defendant Morrow is a New York attorney who is also General Counsel to Hartsfield, a fact that no defendant disclosed to Plaintiff.

43.    The working capital funds were supposedly to be used for drafting the necessary formation documents, coordinating the acquisition of insurance policies, and paying Mr. Morrow his legal fees.   According to Begley, Morrow was a licensed New York lawyer who had participated in a number of multi-million dollar deals.  Additionally, the fact that Plaintiff would send funds to Defendant Morrow's attorney escrow account was also designed to give Plaintiff peace of mind.

44.    Begley and Morrow flew from New York to Singapore in the summer of 2006.  While in Singapore, Morrow and Begley discussed the business venture and the alleged steps being taken to recover Plaintiff's funds from the Canadian lawyer and his insurance policy.  Both Morrow and Begley stressed that Plaintiff would recover the money Hartsfield had lost – whether through a collection process or through the new business venture.

45.    As a trained attorney, Defendant Morrow knew that his employment by Hartsfield would have had a material effect on Dover's willingness to loan funds to this new venture.  Defendant Morrow's failure to disclose that fact was fraudulent, and an abuse of his status as an attorney.

46.    Based on their oral representations in Singapore, and correspondence sent from New York and Georgia, Plaintiff agreed to enter into the new business venture.  In late October, Plaintiff wired $900,000 to the "Escrow & Clients Funds Mgt Account" of TJ Morrow, PC, "Attorneys-at-Law." Warning signs emerged swiftly.

47.    Beginning in November 2006, Plaintiff contacted Begley and Morrow about the status of both the business venture and the status of the funds.  Plaintiff complained that they had already missed an interest payment, due by the terms of the Agreement, and Dover wanted to know the status of its $900,000.  Responding to Plaintiff's inquires, Morrow began sending correspondence from New York to Singapore describing in a Byzantine fashion the new business venture, styled the Insuragift program.

48.    Morrow claimed that he and Begley were in the process of forming the Insuragift program, and he was certain that it would succeed. Morrow further represented that as a result of the business venture Plaintiff would be repaid her money in an efficient and timely manner. Finally, Morrow also attempted to explain the (deliberately) convoluted business structure that he and Begley were creating for Insuragift – a venture that turned out to be just another scheme to steal Plaintiff's money.

49.    Becoming suspicious about yet another excuse for why Dover had still not been repaid, Dover demanded: i) the return of its money, ii) a detailed description of where the $900,000 had been spent, and iii) supporting documents evidencing the distributions. From New York, Morrow sent Plaintiff a general e-mail purportedly listing where the money had been spent. No back-up documents or further explanations were provided. Not a single dime was returned, even though by Morrow's own account $313,360 of Plaintiff's money still remained.

50.    Plaintiff again demanded that Morrow and Begley send the back-up documents and return her money. When no documents were provided, Plaintiff contacted the law firm of Edwards Angell Palmer & Dodge, a vendor listed in Morrow's expense report, and discovered that Morrow had misrepresented the amount that had actually been paid.

51.    In December of 2006 a representative of Dover, Mr. Conrad Seah, and Dover's Ms. Yap traveled to New York and met with Defendant Begley to investigate the additional theft. Defendant Begley offered more excuses, and no explanation for what he did to "earn" $330,000 of his fees from the "escrow." Mr. Seah met with Defendant Morrow as well, and instructed him to return unused funds from the escrow account to Dover. Defendant Morrow refused, and also failed to produce one piece of independent evidence reflecting the remaining $570,000 of "expenses" he had generated and paid without Dover's authorization.

11

52.     In fact, Defendant Morrow actually claims to be owed $100,000, as he billed some

$400,000 to the escrow for his own legal services.  How this sizeable fee was earned is left a mystery, as

the Insuragift program never did a nickel of business, and in fact was found to be likely forbidden under

New York's insurance regulatory apparatus by the very attorneys Defendant Morrow retained to draft

corporate documents.

53.     Based on Dover's discovery of this fraud and Morrow/Begley's failure to return her

money, Plaintiff terminated her professional relationship with Morrow and Begley in late November

2006.  Plaintiff again demanded the return of her money.  No money has been returned.

54.     True to form, Defendant Begley blamed Defendant Morrow's "pernicious behavior" for

the loss of $900,000, and claimed that he had hired an attorney to pursue Defendant Morrow.  No record

of such a litigation appears on Pacer for the Southern District of New York, nor on the eCourts

electronic docket for New York State Supreme Court.

55.     What makes Defendant Morrow's conduct especially egregious is not just that he is an

attorney (Defendant Lovett apparently trained as an attorney as well) but that he was Ms. Yap and Mr.

Seah's attorney, having sent them both as clients a document he styled "Attorney Work Product",

naming them as his clients, after he had accepted Dover's funds into his "Escrow & Clients Funds Mgt

Account."  Nothing disgraces the profession of law more than an attorney plundering his own client.


### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### AGAINST ALL DEFENDANTS

### Common Law Fraud

56.     Plaintiff re-alleges paragraphs 1 through 55.

57.     All Defendants fraudulently schemed to steal money from Plaintiff. The misrepresentations began in 2003 when Plaintiff was told by Defendant Assemi, and then the Hartsfield Defendants, that its investment at Hartsfield would be guaranteed and insured, and in fact would be invested at all. None of these representations was true. Instead, Plaintiff lost $4,150,000 because of the fraudulent scheme of Defendants.

58.     Once receiving Plaintiff's money, Defendants perpetuated the fraudulent scheme by convincing Plaintiff to keep its money with Defendants. Defendants even went so far as to transfer some of the principal back to Plaintiff, misrepresenting the payment as profit.

59.     Defendants defrauded Plaintiff by depositing Plaintiff's funds with an attorney located outside of the United States, as opposed to investing those funds in AA-rated bank notes as they had represented they would.

60.     Defendants further perpetuated the fraudulent scheme in the summer of 2006 when Defendants Begley and Morrow traveled to Singapore in an effort to convince Plaintiff they could recover her lost $3.25MM. They told Plaintiff that if Dover only transferred an additional $900,000 to them the lost funds could be recovered either through collection efforts or Insuragift.

61.     Defendants never intended to form any new business, to institute efforts to recover Plaintiff's funds or perform any other acts to obtain Plaintiff's lost money. Instead, Defendants simply pocketed Plaintiff's money, generated a bogus paper trail to attempt to justify their "fees," and never returned any lost principal.

62.     Plaintiff reasonably relied on Defendants' misrepresentations, and her reasonable reliance led to Plaintiffs loss of $4.15MM and other similar, related damages.

## SECOND CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

### Breach of Fiduciary Duty

63.     Plaintiff re-alleges paragraphs 1 through 62.

64.     Defendant Morrow represented himself to be Plaintiff's counsel.  He failed to disclose that he was actually Hartsfield's counsel.  As its lawyer and custodian of its funds, Morrow owed Plaintiff a fiduciary duty to care for its interest, to ensure that it was adequately protected, and to put its interest above his own.  Morrow, however, did the opposite.  He stole Plaintiff's money.

65.     The other Hartsfield defendants also owed Plaintiff a fiduciary duty.  As Plaintiff's investment advisor, Assemi and Hartsfield represented that it would take Plaintiff's money under their care, custody and control, and that Hartsfield had appropriate insurance to protect Plaintiffs funds, and that Plaintiffs funds would be invested in secure financial products.  Hartsfield breached this fiduciary duty by misappropriating Plaintiff's funds, failing to maintain insurance the investments, and misrepresenting the status of Plaintiff's investment on several occasions.

66.     Defendants Morrow and Hartsfield chose to abuse their positions of trust and misappropriate Plaintiff's money.  As a result, Plaintiff was damaged by their malfeasance, and they are liable for the damages caused by their breaches of fiduciary duty.

## THIRD CAUSE OF ACTION
## AGAINST HARTSFIELD AND HARTSFIELD GROUP

### Breach of Contract

67.     Plaintiff re-alleges paragraphs 1 through 66.

68.     Defendants agreed in the summer of 2003 that Plaintiff's money would be invested, be invested in AA-rated bank notes, and that its investment would be protected by insurance. Defendants expressly guaranteed to Plaintiff in conversations, telephone calls, and written correspondence that the

14

investments were insured and secured. Defendants' representations were subsequently documented in a written agreement.

69.    Plaintiff complied with all conditions precedent to her obligations under the agreement by transferring funds to Defendants. Rather than follow the terms of the contract, Defendants took the money and used it for their own purposes. By failing to comply with the terms of its obligations under the agreement, Defendants breached the contract. Plaintiff has been damaged as a result of Defendants conduct, and they are liable for those damages.

## FOURTH CAUSE OF ACTION
## AGAINST BEGLEY AND MORROW DEFENDANTS

### Breach of Contract

70.    Plaintiff re-alleges paragraphs 1 through 69.

71.    In the summer of 2006, Defendants Morrow and Begley agreed to form a business venture that would be used to re-pay Plaintiff's lost funds.   Plaintiff agreed to transfer $900,000 to these Defendants in order recover its funds, and also generate a profit. Rather than use the money for its intended purpose, Defendants Morrow and Begley used the money for their own purposes.

72.    By transferring the money to Defendants Morrow and Begley, Plaintiff complied with all conditions precedent to the contract. Defendants, however, did not comply with their obligations under the agreement. Their actions, therefore, constitute a breach of contract. Plaintiff was damaged as a result of Defendants breach of contract, and they are liable for the damages that they have caused.

## FIFTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

### Unjust Enrichment

73.    Plaintiff re-alleges paragraphs 1 through 72.

74.    Defendants were enriched by Plaintiff's remittances of funds.

75.    Defendants' enrichment has been at Plaintiff's expense.

76.    The circumstances are such that equity and good conscience Defendants must return $4,150,000.00 in funds to Plaintiff.

77.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendants in an amount equal to the value of all benefits wrongfully and unjustly received by them, together with interest, in an amount to be determined at trial, but not less than $4,150,000.00.

78.    Plaintiff has no adequate remedy at law.

### SIXTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS

**Violation of Section 10(b) of the Securities Exchange Act of 1934**
**and Rule 10b-5 of the Securities and Exchange Commission**

79.    Plaintiff re-alleges paragraphs 1 through 78.

80.    At all relevant times, Defendant Assemi held himself out to Plaintiffs as an investment professional and requested that Plaintiffs place funds with Hartsfield for the purported purpose of investing in certain securities, namely a Non-Depletion Account allegedly offered by Hartsfield, an investment program purportedly designed by Hartsfield to obtain favorable rates of return and provide complete security for Plaintiffs' investment.

81.    At all relevant times, Defendant Assemi represented that (i) Hartsfield would invest Plaintiff's money in a Non-Depletion Account, and that (ii) Dover's principal would not depreciate or "deplete."

82.    Defendant Assemi's aforementioned representations to Plaintiff were false, and Defendant Assemi knew they were false at the time they were made.

83.    At all relevant times Defendant Assemi intentionally and/or recklessly omitted to inform Plaintiff of material information that would have effected its decision to invest with Hartsfield.

84.    The Hartsfield Defendants, and Defendants Lovett, Banzhaf, Reichardt and Begley also intentionally took steps to mislead and deceive Plaintiff by either hiding from them the true state of affairs of Dover's investment or by making affirmative misrepresentations or omissions as to, among other things, the existence of insurance and/or a fidelity bond securing Plaintiff's investment, and that Plaintiff's funds would be invested in AA-rated bank notes.

85.    Defendants' aforementioned representations to Plaintiff were false, and Defendants knew they were false at the time they were made.

86.    At all relevant times Defendants intentionally and/or recklessly omitted to inform Plaintiff of material information that would have effected its decision to invest with Hartsfield.

87.    The false and fraudulent misrepresentations and omissions alleged above were made and/or caused to be made by Defendants with the intent that Plaintiff would rely on those misrepresentations and omissions, which it did, and with the purpose and intent to deceive Plaintiff.

88.    In reasonable reliance upon the above misrepresentations and omissions, Plaintiffs deposited $6,750,000.00 with Hartsfield, $3,250,000.00 of which has never been returned according to its own admissions.

89.    Defendants' misrepresentations and omissions were made in connection with the sale and purchase of securities.

90.    But for Defendants' misrepresentations and omissions, Plaintiff would not have invested funds with Hartsfield at all.

91.     As a direct and proximate result of Defendants' conduct set forth herein, Plaintiff has suffered money damages in an amount to be determined at trial, but not less than $3,250,000.00, excluding interest.

92.     In light of the reckless and egregious conduct by Defendants, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but which Plaintiff believes to be in excess of $5 million.

**SEVENTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS (excluding Assemi)**

**Conversion**

93.     Plaintiff realleges paragraphs 1 through 92.

94.     Plaintiff placed its money with Hartsfield for the purported purpose of investing in a Hartsfield-managed Account.

95.     In July 2003, Plaintiff remitted $6.75 million to Hartsfield for the purpose of investing such monies.

96.     Hartsfield did not invest all of Plaintiff's money in an investment program or security.

97.     Instead, Hartsfield diverted at least $3,250,000 of Plaintiff's money for the purpose of wrongfully and unlawfully enriching itself.

98.     As a direct and proximate result of Hartsfield's conduct, Plaintiff has sustained damages in at least the amount of $3,250,000.00.

99.     Plaintiff subsequently placed its money with Defendants Begley and Morrow for the purported purpose of financing a investment program to securitize insurance policies.

100.    In October 2005, Plaintiff remitted $900,000 million to Defendants Begley and Morrow for the purpose of financing such a program.

18

101.   Defendants Begley and Morrow did not apply all of Plaintiff's remitted funds towards such an investment program.

102.   Instead, Defendants Begley and Morrow diverted some $880,000 of Plaintiff's money for the purpose of wrongfully and unlawfully enriching themselves.

103.   As a direct and proximate result of Defendants Begley and Morrow's conduct, Plaintiff has sustained damages in at least the amount of $880,000.00.

104.   In light of the reckless and egregious conduct by Defendants, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but which Plaintiff believes to be in excess of $5 million.


## EIGTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

### Conspiracy

105.   Plaintiff re-alleges paragraphs 1 through 104.

106.   Throughout the course of their interaction with Plaintiff, Defendants have participated in a conspiracy to deprive Plaintiff of millions of dollars.  The conspiracy began in the summer of 2003 and continued through late 2006.  They used Plaintiff's money for their own benefit despite repeated promises that they would protect Plaintiffs funds, that no principal would be lost, and that the money invested was insured and would be invested in legitimate business operations.   Plaintiff has lost over four million dollars based on Defendants' misrepresentations.  Their actions were part of a conspiracy to deprive Plaintiff of its funds.

107.   As a member of the conspiracy, each of the defendants is liable for the ultimate damages caused to Plaintiff, which includes the over $4 million dollars in losses that occurred over the course of the conspiracy.  Plaintiff seeks to recover these damages from each and every Defendant.

## **RELIEF REQUESTED**

WHEREFORE, plaintiff Dover Limited demands Judgment as follows:

A. As to the First Cause of Action, awarding Plaintiff compensatory damages against Defendants, including interest thereon, in an amount to be determined at trial, but not less than $4,130,000.00;

B. As to the Second Cause of Action, awarding Plaintiff compensatory damages against Defendants, including interest thereon, in an amount to be determined at trial, but not less than $4,130,000.00;

C. As to the Third Cause of Action, awarding Plaintiff compensatory damages against Defendants Hartsfield Capital Group and Hartsfield Capital Securities, and Mansell Capital Partners, LLC, including interest thereon, in an amount to be determined at trial, but not less than $3,250,000.00;

D. As to the Fourth Cause of Action, awarding Plaintiff compensatory damages against Defendants Begley and Morrow, including interest thereon, in an amount to be determined at trial, but not less than $880,000.00;

E. As to the Fifth Cause of Action, awarding Plaintiff compensatory damages against Defendants, including interest thereon, in an amount to be determined at trial, but not less than $4,130,000.00;

F. As to the Sixth Cause of Action, awarding Plaintiff compensatory damages against Defendants, including interest thereon, in an amount to be determined at trial, but not less than $4,130,000.00;

G.    As to the Seventh Cause of Action, awarding Plaintiff compensatory damages against Defendants, including interest thereon, in an amount to be determined at trial, but not less than $4,130,000.00;

H.    As to the Eighth Cause of Action, awarding Plaintiffs compensatory damages against Defendants, including interest thereon, in an amount to be determined at trial, but not less than $4,130,000.00;

I.    As to all Causes of Action, Plaintiff seeks punitive damages against Defendants for the egregious fraudulent acts and breaches of fiduciary committed by Defendants, in an amount to be determined at trial, but no less than $5,000,000.00.

**WHEREFORE**, Plaintiff requests that a judgment be entered against Defendants as described above and for such other and further relief to which it may be justly entitled.

Dated: New York, New York
February 11, 2008

Respectfully submitted,

LAW OFFICES OF THOMAS M. MULLANEY

By: _____
Thomas M. Mullaney (TM 4274)

Attorneys for Plaintiff
Dover Limited
708 Third Avenue, Suite 2500
New York, NY 10017
(212) 223-0800
(212) 661-9860 (facsimile)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

DOVER LIMITED,

                            Plaintiff, :

                     v.

ALAIN ASSEMI, HARTSFIELD CAPITAL
SECURITIES, INC., HARTSFIELD CAPITAL GROUP,
STEPHEN J. LOVETT, JOHN H. BANZHAF, DELBERT
D. REICHARDT, MANSELL CAPITAL PARTNERS,
LLC, THOMAS O. BEGLEY, THOMAS O. BEGLEY &
ASSOCIATES, T.J. MORROW and TJ MORROW PC,

                          Defendants. :

**ECF CASE**

Docket No. 08 CV 1337
(LTS)(JCF)

**AFFIDAVIT OF THOMAS O.
BEGLEY IN SUPPORT OF
THE MOTION TO DISMISS
OR TRANSFER VENUE**

-------------------------------------------------------------------- x

STATE OF GEORGIA    )
                            )   ss.:
COUNTY OF FULTON    )

       THOMAS O. BEGLEY, being duly sworn, deposes and says:

1.    I am one of the defendants named in this action and was the organizer, manager and

President of T.O. Begley & Associates, LLC ("TOBA"), imprecisely named as a defendant in

this action.

2.    I submit this affidavit in support of the motion: (a) to dismiss pursuant to (i) F.R.C.P.

12(b)(2) for lack of personal jurisdiction; (ii) F.R.C.P. 12(b)(6) for failure to state a claim upon

which relief can be granted and (iii) F.R.C.P. 12(b)(3) for improper venue; and alternatively (b)

to transfer venue pursuant to 28 U.S.C. §1404(a).

**This Court Lacks Personal
Jurisdiction:**

3.      I have resided at 570 Clarinbridge Way, Alpharetta, Georgia 30022 for the past 11 years

and work at 1105 Lakewood Parkway, Alpharetta, GA 30022

4.      I do not, nor have I ever, maintained a residence in New York City.  I do not solicit

business from potential clients within the State of New York, I don't list any telephone numbers

in New York, I have no bank accounts in New York, I have never brought a lawsuit in New York

courts, and do not generate income from within New York.

5.      TOBA was a limited liability company organized under the laws of the State of Georgia.

Its place of business was 3775 Mansell Road, Alpharetta, Georgia 30022.

6.      TOBA is no longer in existence.  It was dissolved by the Georgia Secretary of State on

July 9, 2005.

7.      While TOBA did exist, it did not have a place of business within the State of New York.

TOBA had no telephone numbers listed within the State of New York.  It had no bank accounts

in New York, it did not advertise in New York, it did not list any New York address on its

letterhead, it brought no lawsuits in courts located in the State New York nor did TOBA derive

income generated from within the State of New York.

8.      The plaintiff, Dover Limited ("Dover"), states various allegations in its complaint

regarding two transactions, the first Dover titles the "Hartsfield Theft" and the second it titles the

"Begley-Morrow Theft."

2

9.      As to both of these transactions Dover claims that "Venue is proper in the Southern District of New York because all or part of the factual events that occurred in this case arose in the Borough of Manhattan, New York, New York." See Dover's complaint at paragraph 13.[1]

10.     However, contrary to Dover's broad and self-contradicted allegation, few of the events alleged in the complaint, let alone those in which I or TOBA is alleged to be involved in, arose in New York. In fact, nearly every relevant event that I am aware of took place in Georgia or at least did not occur in New York.

11.     Perhaps most fundamental to the Court's analysis is that neither I nor TOBA entered into any contract with Dover within the State of New York.

**The Southern District of New York is an Improper Venue:**

12.     For the reasons set forth in the accompanying memorandum of law, the Southern District of New York is not a proper venue for this action. Dover is a Hong Kong corporation with a place of business in Singapore. Eight of the 11 defendants reside in Georgia or have (or had) a principal place of business in Georgia. Upon information and belief, Mr. Assemi resides in Switzerland, Mr. Morrow resides in North Carolina, and Mr. Morrow's law firm, TJ Morrow PC, no longer exists.

13.     As Dover's complaint alleges, and as set forth in this affidavit and the accompanying memorandum of law, none of the "Hartsfield Theft" events took place in New York. As to the "Begley-Morrow Theft," the central purported event was a meeting in Singapore which alleges I attended with Mr. Morrow. Dover alleges that it relied upon representations made at the meeting

---

[1] Unless stated otherwise, references are to Dover's Complaint.

3

in Singapore, as well as correspondence from Georgia (which I presume to mean correspondence sent by me) and New York (presumably from Mr. Morrow).

14.     There is no allegation pertaining to the agreement pursuant to which Dover purports to have wired $900,000 to TJ Morrow PC.

15.     Standing alone, Dover simply does not allege that "a substantial part of the events or omissions giving rise to the ["Begley-Morrow Theft"] occurred" in New York.  Taken together, nearly every allegation of the complaint is centered on Georgia, including Dover's purported investment of $6.75MM with Hartsfield Capital Securities, 7½ times the amount Dover claims to have deposited with TJ Morrow PC.

**If Not Dismissed, This Action Should Be Transferred to the Northern District of Georgia:**

16.     Should the Court determine that this action should not be dismissed in its entirety against me and TOBA, I respectfully request that this action be transferred to the Northern District of Georgia.

17.     Dover sets forth no basis for its choice of New York as the forum for this action.  Since Dover is a Hong Kong company with a place of business in Singapore, the Northern District of Georgia would be less convenient to Dover than the Southern District of New York.  But the Northern District of Georgia would be far more convenient for me, TOBA and, I assume, for the six other Georgia defendants.

18.     Alpharetta is a suburb of Atlanta, approximately 25 miles from Atlanta, where the Federal District Courthouse for the Northern District of Georgia is located.  It would obviously be far less costly and much more convenient for me to attend court proceedings in Georgia where

4

I would avoid the time and expense of travel and the cost hotels that would be required if this action proceeds in New York. I assume this is true for the other six Georgia based defendants as well as any Georgia based non-party witnesses.

19.    I also presume that there are no relevant documents located in New York. My and TOBA's documents are in Georgia. I assume that the same is true of the six other Georgia based defendants. I do not know where Mr. Assemi maintains his documents, but I assume they are either in California (where Dover alleges he resides) or in Switzerland (where I believe he now resides). I presume that any document from Mr. Morrow's law firm are with Mr. Morrow in North Carolina.

20.    The convenience of the parties and the location of non-party witnesses and documents overwhelmingly weighs in favor of transferring this matter to the Northern District of Georgia The same is true of the relative means of the parties.

21.    Dover is a corporate entity with millions of dollars at its disposal. Indeed, Dover alleges that it invested $10MM with A.B. Watley, Inc. (¶15). By contrast, I am an individual of limited means and TOBA is defunct. My earnings in 2007 were less than $40,000.00. Even paying the legal fees in connection with this motion is a hardship. The addition expense of defending this action in New York is absolutely unjust and unnecessary and, I believe, adds to the comparative expenses of not just the defendants, but the plaintiff too.

**Conclusion:**

22.    For all of the foregoing reasons, I respectfully request that this action be dismissed against myself and TOBA. Alternatively, I respectfully request that this action be transferred to the Northern District of Georgia.

Respectfully submitted,

THOMAS M. BEGLEY

Sworn to before me this
_12_ day of June, 2008

Notary Public

**Nadia Simmo**
**Notary Public, Cobb County Georgia**
**My Commission Expires June 6 2011**

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

DOVER LIMITED,                                              :
                                                           : **ECF CASE**
                                            Plaintiff,: ELECTRONICALLY FILED
                                                           : Docket No. 08 CV 1337
                            v.                             : (LTS)(JCF)
                                                           :
ALAIN ASSEMI, HARTSFIELD CAPITAL                           : **AFFIDAVIT OF STEPHAN J.**
SECURITIES, INC., HARTSFIELD CAPITAL GROUP,  : **LOVETT IN SUPPORT OF THE**
STEPHEN J. LOVETT, JOHN H. BANZHAF, DELBERT : **MOTION TO DISMISS OR**
D. REICHARDT, MANSELL CAPITAL PARTNERS,     : **TRANSFER VENUE**
LLC, THOMAS O. BEGLEY, THOMAS O. BEGLEY &  :
ASSOCIATES, T.J. MORROW and TJ MORROW PC,    :
                                                           :
                                            Defendants.:
-----------------------------------------------------------------------x


STATE OF GEORGIA        )
                        )   ss.:
COUNTY OF FULTON        )

        STEPHAN J. LOVETT, being duly sworn, deposes and says:

1.      I am one of the defendants named in this action and am the Chief Executive Officer of

Hartsfield Capital Group, Inc. (HC Group).

2.      I submit this affidavit in support of the motion: (a) to dismiss pursuant to (i) F.R.C.P.

12(b)(2) for lack of personal jurisdiction; (ii) F.R.C.P. 12(b)(6) for failure to state a claim upon

which relief can be granted and (iii) F.R.C.P. 12(b)(3) for improper venue; and alternatively (b)

to transfer venue pursuant to 28 U.S.C. §1404(a).

**This Court Lacks Personal Jurisdiction:**

3.      Neither I nor HC Group is subject to the jurisdiction of the Southern District of New

York.

4.      I have an office at Lakewood Parkway, Suite 425, Alpharetta, Georgia 30004. I do not reside in New York City nor have I since 1971, long before any of the events alleged by Dover. I do not have any telephone listings in New York City, I have no bank accounts in New York City, I have not brought any lawsuits in New York courts, and do not generate income from within New York.

5.      HC Group is a Nevada corporation authorized to transact business in the State of Georgia. Its principal place of business is 1105 Lakewood Parkway, Suite 425, Alpharetta, Georgia 30004.

6.      HC Group has never had a place of business in New York. HC Group never had a telephone number listed in New York. It does not have, nor has it ever had, any bank accounts in New York. HC Group does not solicit business from New York. It does not advertise, and has not advertised, in New York. It does not, nor has it ever, listed a New York address on its letterhead. HC Group has never brought a lawsuit in courts located in the State New York and prior to this action had never been sued in New York. HC Group derives no income generated from within the State of New York.

7.      The plaintiff, Dover Limited ("Dover"), states various allegations in its complaint regarding two transactions, the first Dover titles the "Hartsfield Theft" and the second it titles the "Begley-Morrow Theft." Neither I, nor HC Group, was involved in either of these transactions.

8.      As to both of these transactions Dover claims that "Venue is proper in the Southern District of New York because all or part of the factual events that occurred in this case arose in the Borough of Manhattan, New York, New York." See Dover's complaint at paragraph 13.[1]

---

[1] Unless stated otherwise, references are to Dover's Complaint.

9.      Contrary to Dover's broad and self-contradicted allegation, nearly every event alleged in the complaint arose outside New York. Importantly, there is no allegation that either I or HC Group performed (or failed to perform) any action in New York. In fact, every event that I am personally aware of took place in Georgia.

10.     Finally, neither I nor HC Group is alleged to have entered into any contract with Dover, let alone any contract within the State of New York.

11.     The Court should note that although previously similarly named, HC Group is unrelated to defendant Hartsfield Capital Securities, Inc. (now Argosy Capital Securities, Inc.). There are no interlocking owners, directors or officers.

### The Southern District of New York is an Improper Venue:

12.     For the reasons set forth in the accompanying memorandum of law, the Southern District of New York is not a proper venue for this action. Dover is a Hong Kong corporation with a place of business in Singapore. Eight of the 11 defendants reside in Georgia or have (or had) a principal place of business in Georgia. Upon information and belief, Mr. Assemi resides in Switzerland, Mr. Morrow resides in North Carolina, and Mr. Morrow's law firm, TJ Morrow PC, no longer exists.

13.     As Dover alleges, and as set forth in this affidavit and the accompanying memorandum of law, none of the "Hartsfield Theft" events took place in New York. As to the "Begley-Morrow Theft" (I again note that neither I nor HC Group is alleged to have been involved in any way with the "Begley-Morrow Theft"), the central event was an alleged meeting in Singapore between Messrs. Begley and Morrow.

3

14.    Simply put, I do not believe that there is any basis for venue in the Southern District of New York. Certainly Dover does not allege a basis for venue in New York.

**If Not Dismissed, This Action Should Be
Transferred to the Northern District of
Georgia:**

15.    If the Court determines that this action should not be dismissed in its entirety against me and HC Group, then I would respectfully request that this action be transferred to the Northern District of Georgia.

16.    Dover sets forth no basis for its choice of New York as the forum for this action. Since Dover is a Hong Kong company with a place of business in Singapore, the Northern District of Georgia would be less convenient to Dover than the Southern District of New York. But the Northern District of Georgia would be far more convenient for me, HC Group and, I assume, for the six other Georgia defendants.

17.    I have an office at 1105 Lakewood Parkway, Suite 425, Alpharetta, Georgia 30004. Alpharetta is a suburb of Atlanta, approximately 25 miles from Federal District Courthouse for the Northern District of Georgia. It would obviously be far less costly and more convenient for me to attend court proceedings in Georgia where I would avoid the time and expense of travel and the cost hotels that would be required if this action proceeds in New York. I again assume this is also true for the other six Georgia based defendants as well as any Georgia based non-party witnesses as to whom I may not be able to compel attendance at a New York trial.

18.    I also presume that there are no relevant documents located in New York. My and HC Group's documents (to the extent they are relevant) are in Georgia. I again assume that the same is true of the six other Georgia based defendants. I do not know where Mr. Assemi maintains his documents, but I assume they are either in California (where Dover alleges he resides) or in

4

Switzerland (where I believe he now resides). I presume that any document from Mr. Morrow's law firm are with Mr. Morrow in North Carolina.

19.     The convenience of the parties and the location of non-party witnesses and documents overwhelmingly weighs in favor of transferring this matter to the Northern District of Georgia The same is true of the relative means of the parties.

20.     Dover is a corporate entity with millions of dollars at its disposal. Indeed, Dover alleges that it invested $10MM with A.B. Watley, Inc. (¶15). By contrast, I am an individual of limited means and HC Group is similarly of limited means. My personal earnings in 2007 were negative and HC Group had a net operating loss in 2007 of $73,000. The additional expense of defending this action in New York is absolutely unjust and unnecessary and, I believe, will add to the comparative expenses of not just the defendants, but of the plaintiff too.

21.     Taken together, nearly every allegation of the complaint is centered on Alpharetta, Georgia. The purported "Begley-Morrow Theft" involves only four of the 11 named defendants (Messrs. Begley and Morrow, and their respective corporate entities, T.O. Begley & Associates and TJ Morrow PC). Dover's purported investment of $6.75MM with Hartsfield Capital Securities is 7½ times the amount Dover claims to have deposited with TJ Morrow PC.

[intentionally left blank]

5

**Conclusion:**

22.    For all of the foregoing reasons, I respectfully request that this action be dismissed

against myself and HC Group.  Alternatively, I respectfully request that this action be transferred

to the Northern District of Georgia.

Respectfully submitted,

Sworn to before me this

_13_ day of June, 2008

Notary Public

Nadia Simmon
Notary Public, Cobb County Georgia
My Commission Expires June 6 2011