Jon Schuyler Brooks (JB 7218)
jbrooks@phillipsnizer.com
Jeremy D. Richardson (JR 7706)
jrichardson@phillipsnizer.com
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700
Attorneys for Defendants
Thomas O. Begley, Thomas O. Begley & Associates,
Stephan J. Lovett and Hartsfield Capital Group

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
DOVER LIMITED,                                      :
                                                   :    **ECF CASE**
                                      Plaintiff,:       ELECTRONICALLY FILED
                                                   :    Docket No. 08 CV 1337
                          v.                       :    (LTS)(JCF)
                                                   :
ALAIN ASSEMI, HARTSFIELD CAPITAL                   :
SECURITIES, INC., HARTSFIELD CAPITAL GROUP,        :
STEPHEN J. LOVETT, JOHN H. BANZHAF, DELBERT        :
D. REICHARDT, MANSELL CAPITAL PARTNERS,            :
LLC, THOMAS O. BEGLEY, THOMAS O. BEGLEY &          :
ASSOCIATES, T.J. MORROW and TJ MORROW PC,          :
                                                   :
                                      Defendants.:
-----------------------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANTS HARTSFIELD CAPITAL
GROUP, STEPHEN J. LOVETT, THOMAS O. BEGLEY, THOMAS O.
BEGLEY & ASSOCIATES IN SUPPORT OF THEIR MOTION
PURSUANT TO F.R.C.P. 12(b)(2), (3), (6) and 28 U.S.C. 1404(a)**

Of Counsel:

    Jon Schuyler Brooks
    Jeremy D. Richardson

PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York 10103-0084
(212) 977-9700

<u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ALLEGATIONS........................................................................ 2

   The Purported "Hartsfield Theft": .................................................................. 2

   The Purported "Begley-Morrow Theft": ........................................................ 3

   The Lack of Contacts of the Moving Defendants with New York: ............................. 4

ARGUMENT ....................................................................................................... 5

POINT I       THE ACTION SHOULD BE DISMISSED AGAINST THE MOVING
            DEFENDANTS BECAUSE THIS COURT DOES NOT HAVE
            JURISDICTION OVER THEM ........................................................ 5

   The Purported "Hartsfield Theft": .................................................................. 6

   The Purported "Begley-Morrow Theft": ........................................................ 7

POINT II      THE ACTION SHOULD BE DISMISSED AGAINST THE MOVING
            DEFENDANTS BECAUSE THE COMPLAINT FAILS TO STATE ANY
            CLAIM UPON WHICH RELIEF CAN BE GRANTED ....................................... 8

   A.   First Cause of Action – Common Law Fraud: .................................................. 9

   The Purported "Hartsfield Theft": .................................................................. 9

   The Purported "Begley-Morrow Theft": ........................................................ 10

   B.   Second Cause of Action – Breach of Fiduciary Duty:......................................... 11

   C.   Third Cause of Action – Breach of Contract Against HC Securities and HC Group:........ 12

   D.   Fourth Cause of Action – Breach of Contract Against Begley and Morrow:.................... 12

   E.   Fifth Cause of Action – Unjust Enrichment: .................................................... 13

   F.   Sixth Cause of Action – Violation of Section 10(b) of the Securities Exchange Act of
      1934 and Rule 10b-5 of the Securities and Exchange Commission: ............................. 14

   G.   Seventh Cause of Action – Conversion: .......................................................... 15

H.   Eighth Cause of Action – Conspiracy:.................................................................16

POINT III    THE ACTION SHOULD BE DISMISSED AGAINST THE MOVING
DEFENDANTS BECAUSE THE SOUTHERN DISTRICT OF
NEW YORK IS NOT A PROPER VENUE.........................................................17

POINT IV    ALTERNATIVELY, THE ACTION SHOULD BE TRANSFERRED
TO THE NORTHERN DISTRICT OF GEORGIA WHERE THE EVENTS
OCCURRED, THE MAJORITY OF THE WITNESSES RESIDE, THE
DOCUMENTS ARE LOCATED AND WHERE THE INTERESTS OF
JUSTICE CAN BEST BE SERVED ..................................................................19

A.   Plaintiff's Choice of Forum: ...............................................................................20

B.   Location of the Parties, Witnesses and Documents:............................................20

C.   Locus of Operative Facts: ....................................................................................21

D.   The Availability of Process to Compel the Attendance of Unwilling Witnesses:.............21

E.   The Relative Means of the Parties: ......................................................................22

F.   The Comparative Familiarity of Each District With The Governing Law: .......................22

G.   Judicial Economy and the Interests of Justice: ...................................................23

CONCLUSION..................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) ................................................5

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ............................................................8, 9

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985) ........................14

*Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 809 N.Y.S.2d 270 (3d Dep't 2006) ...........11

*Campbell v. San Antonio*, 43 F.3d 973 (5th Cir. 1995) ..................................................................9

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259 (1958) ............................................................................................................................................9

*Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 827 N.Y.S.2d 96 (2006) .........15

*Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F.Supp. 1247 (S.D.N.Y. 1995) ........23

*Cooper, Robertson & Partners, LLP v. Vail*, 143 F.Supp.2d 367 (S.D.N.Y. 2001) ......................7

*D.H. Blair & Co, Inc. v Gottdiener*, 462 F.3d 95 (2d Cir. 2006), *on remand*, 2007 WL 259931 (S.D.N.Y. Jan. 29, 2007) ..................................................................................................19

*EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005) ...........................11

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995) ......................................................................................................................9

*Gouldsbury v. Dan's Supreme Supermarket, Inc.*, 154 A.D.2d 509, 546 N.Y.S.2d 379 (2d Dept. 1989), *appeal denied*, 75 N.Y.2d 701, 551 N.Y.S.2d 905 (1989) .......................................17

*Green v. Davies*, 182 N.Y. 499 (1905) ........................................................................................16

*Harris v. Brody*, 476 F.Supp. 2d 405 (S.D.N.Y. 2007) ................................................................19

*Hoffman v. Unterberg*, 9 A.D.3d 386, 780 N.Y.S.2d 617 (2d Dep't 2004) ..................................15

*Johnson v. Ward*, 4 N.Y.3d 516, 797 N.Y.S.2d 33, 829 N.E.2d 1201 [2005]...............................6

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F.Supp. 1131 (S.D.N.Y. 1997), *rev'd on other grounds,* 186 F.3d 210 (2d Cir. 1999)..............................................................................7

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195 (1988) ................................6

*Marks v. New York Univ.*, 61 F. Supp. 2d 81 (S.D.N.Y. 1999) ......................................12

*Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496 (4th Dep't 1981) ...........................16

*Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175 (S.D.N.Y. 1995) .....................23

*Rasmussen v. A.C.T. Environmental Services*, 292 A.D.2d 710 (3d Dep't 2002).........................11

*Riverbank Realty Co. v. Koffman*, 179 A.D.2d 542, 579 N.Y.S.2d 870 (1st Dept. 1992)............16

*Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326 (11th Cir. 1988) ...............................14

*Rule v. Brine, Inc.*, 85 F.3d 1002 (2d Cir. 1996) ........................................................13

*SRW Assocs. v. Bellport Beach Prop. Owners*, 129 A.D.2d 328, 517 N.Y.S.2d 741 (2d Dept. 1987) .........................................................................................................16

*Scheuer v. Schwartz*, 42 A.D.3d 314, 839 N.Y.S.2d 485 (1st Dept. 2007) ......................5

*Schlifke v. Seafirst Corp.*, 866 F.2d 935 (7th Cir. 1989)................................................14

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir.), *cert. denied* 506 U.S. 934 (1992)................14

*Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) ......................9

*Sylmark Holdings Ltd. v. Silicone Zone International, Ltd.*, 783 N.Y.S.2d 758 (Sup. Ct. N.Y. Co. 2004).......................................................................................................12

*United Computer Capital Corp. v. Secure Products*, 218 F.Supp.2d 273 (N.D.N.Y. 2002)...........7

*Warren v. Reserve Fund, Inc.*, 728 F.2d 741 (5th Cir. 1984) ........................................14

*Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618 (1st Cir. 1988)................14

*Zepherin v. Greyhound Lines Inc.*, 415 F.Supp.2d 409 (S.D.N.Y. 2006)....................20

*Zlotnick v. TIE Communications*, 836 F.2d 818 (3d Cir. 1988)....................................14

## STATUTES

C.P.L.R. § 214(3) ...................................................................................................16

C.P.L.R. § 302(a)(1) ...............................................................................................5

F.R.C.P. 9(b) .......................................................................................................2, 9

F.R.C.P. 12(b)(2) .........................................................................................1, 8, 23

F.R.C.P. 12(b)(3) .......................................................................................1, 17, 23

F.R.C.P. 12(b)(6) .........................................................................................1, 8, 23

28 U.S.C. §1391(a) ................................................................................................5

28 U.S.C. 1404(a) .......................................................................................1, 7, 11

## MISCELLANEOUS

2 <u>Bender's Forms of Pleading of the State of New York</u> §14 ...............................3

2 <u>Moore's Federal Practice</u> § 12.34[1][b].........................................................9

17 <u>Moore's Federal Practice</u> §111.13[1][n]....................................................23

2 <u>New York Civil Practice</u> ¶302.00 ..................................................................5

## PRELIMINARY STATEMENT

Defendants Thomas O. Begley ("Begley"), Thomas O. Begley & Associates ("TOBA"), Stephen J. Lovett ("Lovett"), and Hartsfield Capital Group ("HC Group") (collectively the "Moving Defendants"), by their attorneys Phillips Nizer LLP, submit this memorandum of law in support of their motion: (a) to dismiss pursuant to (i) F.R.C.P. 12(b)(2) for lack of personal jurisdiction; (ii) F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted and (iii) F.R.C.P. 12(b)(3) for improper venue; and alternatively (b) to transfer venue pursuant to 28 U.S.C. §1404(a).

None of the Moving Defendants are subject personal jurisdiction in this Court. Also, Plaintiff, Dover Limited ("Dover" or "Plaintiff"), fails to state in its complaint (the "Complaint") the essential elements of any of the purported causes of action against the Moving Defendants. Accordingly, this action should be dismissed in its entirety against the Moving Defendants.

If the Court finds that the Moving Defendants are subject to personal jurisdiction, and if the Court finds that the Complaint states viable claims, the Court should still dismiss the case because venue does not lie in the Southern District of New York.

Alternatively, the action should be transferred to the United States District Court for the Northern District of Georgia, where, the Complaint alleges, *eight* of the 11 defendants reside or maintain a principal place of business.[1]  Plaintiff is not a United States citizen (Dover, according to the Complaint (¶1), is a Hong Kong company with a principal place of business in Singapore) and has no jurisdictional contact with New York.  The other three defendants are: (i) Alain Assemi, alleged to reside in California but apparently living in Switzerland; (ii) T.J. Morrow,

---

[1] Although Dover names Mansell Capital Partners, LLC ("Mansell"), as a defendant, Dover omits Mansell from the "Parties" section of the Complaint (¶¶ 1-11).  Mansell, now defunct, had a place of business in Alpharetta, Georgia, an Atlanta suburb approximately 25 miles north of the Northern District of Georgia courthouse.

alleged to reside in North Carolina; and (iii) TJ Morrow PC, an inactive New York professional corporation whose principal, T.J. Morrow, allegedly resides in North Carolina.

## BACKGROUND ALLEGATIONS[2]

Dover sets forth two unrelated transactions as the purported basis for this action. The allegations pertaining to the first transaction, which Dover titles "The Hartsfield Theft," are set forth in paragraphs 14 through 40 of the Complaint. The allegations relevant to the second transaction, titled "The Begley-Morrow Theft," are set forth in Paragraphs 41 through 55.

**The Purported "Hartsfield Theft":**

The material allegations of this purported theft are all attributable solely to HC Securities. HC Securities is not the same as HC Group. HC Securities, although once similarly named,[3] is unrelated to HC Group. These entities have no interlocking owners, directors or officers.

Dover's allegations are vague, inconsistent and contradictory. For example, Dover alleges that:

- Dover invested $6.75MM with defendant Hartsfield Capital Securities ("HC Securities") (¶¶17,88 and 95)[4]

- HC Group (not HC Securities) "accepted Dover's funds on July 16, 2003…" (¶22) (contradicting the repeated claim that Dover invested funds with HC Securities);

- "after negotiation, [HC Securities] agreed to return $2.5MM of Dover's money …" (¶22);

- the balance of the funds, $4.25MM was to be deposited with defendant Mansell Capital Partners (¶ 23);

- Dover requested the return of, and received, $1MM from HC Securities, leaving a balance of approximately $3.25MM with HC Securities (¶25);

- defendant Banzhaf sent approximately $97,000 to Dover (¶27);

- defendants HC Securities, Mansell and Banzhaf also paid to Dover $1,498,387 in interest (¶27);

---

[2] For the Court's convenience, a copy of Dover's Complaint is included.

[3] HC Securities changed its name to Argosy Capital Securities, Inc., effective April 6, 2006.

[4] References are to the Complaint unless otherwise stated.

- Dover demanded many times that HC Securities return Dover's funds and that each time defendant HC Securities stated the forms will be coming shortly (¶¶ 29 and 30); and

- HC Securities informed Dover that its money had been stolen by "an unscrupulous lawyer in Canada" (¶ 31).

However vague, inconsistent and contradictory, it is clear that Dover **_does not allege_** that it deposited any funds with the Moving Defendants.[5]  Dover does not allege that the Moving Defendants owed a duty to Dover for the funds allegedly deposited with HC Securities.  Dover does not allege acts or omissions by the Moving Defendants in connection with any of the purported causes of action against them.

**The Purported "Begley-Morrow Theft":**

Here, Dover alleges that:

- Begley proposed to form a new business (¶41);

- Begley sought $900,000 to start the new business (¶42);

- Begley introduced Dover to T.J. Morrow (¶42);

- Begley and Morrow traveled to Singapore in the Summer of 2006 where they (Morrow and Begley) discussed the business venture and the alleged steps being taken to recover Dover's funds from the Canadian lawyer and his insurance policy (¶44); and

- Dover wired $900,000 to the "Escrow & Clients Funds Mgt account" of T.J. Morrow, PC, "Attorneys-at-Law" (¶ 46).

Dover does not allege that it deposited any funds with Begley or TOBA.  Rather, Dover deposited its funds with TJ Morrow P.C. with the understanding that the funds would be held in an attorney escrow account, presumably controlled by TJ Morrow but clearly not controlled by Begley or TOBA.

---

[5] While Dover states in ¶ 22 that HC Group accepted Dover's funds, Dover repeatedly alleges that it deposited its funds with HC Securities, that HC Securities returned portions of the funds, and that Dover demanded return of the balance of the funds only from HC Securities.  It should not be inferred that Dover deposited funds with HC Group.

**The Lack of Contacts of the Moving
Defendants with New York:**

Dover alleges that the Moving Defendants all reside, or have a principal place of business, in Alpharetta, Georgia.[6]

With respect to the purported "Hartsfield Theft," Dover alleges that it deposited $6.75MM with HC Securities (in Alpharetta, Georgia), that a portion of Dover's funds were deposited with a Canadian lawyer who sent those funds to Spain, and then the money disappeared. Dover does not allege any contact of the Moving Defendants to New York. Notwithstanding the lack of any contacts with New York, Dover brought this action in the Southern District of New York. It is clear that the Moving Defendants and that the purported "Hartsfield Theft" lack any contacts with New York. The Moving Defendants do not reside in, have a place of business in, conduct business in, or have bank accounts in New York (see Begley Affidavit at paragraphs 4 and 7 and Lovett Affidavit at paragraphs 4 and 6).

With respect to the purported "Begley-Morrow Theft," Dover fails to allege that either Begley or TOBA have contacts with New York.[7] In light of the allegations stated in paragraphs 14 through 55 of the Complaint, it is inexplicable that Dover alleges in paragraph 13 that "venue is proper in the Southern District of New York because all or part of the factual events that occurred in this case arose in the Borough in Manhattan, New York, New York."

Because the Court lacks personal jurisdiction over the Moving Defendants, The action should be dismissed against them.

---

[6] Dover similarly alleges that defendants HC Securities, Banzhaf and Reichardt reside, or have a principal place of business, in Alpharetta, Georgia. Mansell had a principal place of business in Alpharetta, Georgia.

[7] Dover makes no allegations pertaining to Lovett and HC Group with respect to the "Begley-Morrow Theft."

# ARGUMENT

## POINT I

## THE ACTION SHOULD BE DISMISSED AGAINST THE MOVING DEFENDANTS BECAUSE THIS COURT DOES NOT HAVE JURISDICTION OVER THEM

Dover contends that the jurisdiction of this court is based upon diversity. Dover admits that each of the Moving Defendants is a resident of Georgia and does not allege that any of the Moving Defendants has contacts with New York that subject them to the general jurisdiction of this Court. Thus, the Court may only exercise jurisdiction by application of the long-arm statute.

This Court cannot exercise long-arm jurisdiction over the Moving Defendants because: (i) the transactions did not arise in the Southern District of New York; and (ii) Dover does not allege sufficient contacts between any of the Moving Defendants and the Southern District of New York related to either of the transactions for which Dover seeks an award, nor can Dover allege such contacts.

Whether this Court may exercise personal jurisdiction over the Moving Defendants, none of whom are New York residents, is determined by C.P.L.R. § 302(a)(1). See *e.g. A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993). The standards for exercising long-arm jurisdiction are addressed in 2 New York Civil Practice ¶302.00 (Weinstein Korn & Miller, 2d ed.).

> Essential to the maintenance of a suit against a nondomiciliary under CPLR 302(a)(1) is an articulable nexus between the business transacted and the cause of action asserted.

In *Scheuer v. Schwartz*, 42 A.D.3d 314, 315, 839 N.Y.S.2d 485, 486 (1st Dept. 2007), the Appellate Division said it this way:

> CPLR 302(a)(1) permits Supreme Court to exercise long-arm jurisdiction over a non-domiciliary where: (1) the defendant

> transacted business within the state and (2) the cause of action
> arose from that transaction of business (*Johnson v. Ward*, 4 N.Y.3d
> 516, 797 N.Y.S.2d 33, 829 N.E.2d 1201 [2005]).

Dover must show that the Moving Defendants engaged in the transactions in New York, and that Moving Defendants' activities in New York "were purposeful and there is a substantial relationship between the transaction and the claim asserted." See *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988). Even assuming the truth of the allegations of the Complaint, and notwithstanding the internal inconsistencies, Dover has not met, and cannot meet, this burden.

**The Purported "Hartsfield Theft":**

With respect to the purported Hartsfield Theft, Dover alleges that it invested $6.75MM with HC Securities (¶17), which is located in Alpharetta, Georgia (¶3). Dover's funds were allegedly accepted by HC Group (¶22), located in Alpharetta, Georgia (¶4). In October 2003, three months after Dover allegedly invested its money with HC Securities, Dover's director, Ms. Yap, visited HC Securities' office, located in Alpharetta, Georgia (¶3).

No New York events prior to or even closely following Dover's investment of funds or HC Securities are alleged. The only claimed New York event is a meeting among Dover, Begley and other unnamed HC Securities' employees at the Tribeca Grand Hotel, in July 2004 (¶28), a full year ***after*** Dover invested funds with HC Securities. At that meeting, Dover claims they discussed the status of Dover's investment and other potential business opportunities unrelated to Dover's investment with HC Securities.

Thus, while Dover broadly asserts that "all or part of the factual events" arose in the Borough of Manhattan (¶13), Dover actually alleges only a single meeting that occurred one year after Dover invested its funds with HC Securities, attended by "Begley and other Hartsfield employees," at which "Begley repeatedly stressed that [Dover's] money was secure" and

"Hartsfield also took this time in New York to pitch new business to [Dover]" (¶27).  This single, post-transaction meeting, was not attended by Lovett, HC Group or TOBA, was not attended by John Banzhaf or Delbert Reichardt (the CEO and CFO of HC Securities), could not logically have been essential to the formation of Dover's investment with HC Securities (because Dover's investment was made a year earlier) and did not substantially advance Dover's existing relationship with HC Securities or result in new business between them.  Thus, this single, post-transaction meeting, does not support personal jurisdiction by application of New York's long-arm statute.  See, *e.g.*, *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F.Supp. 1131, 1136 (S.D.N.Y. 1997), *rev'd on other grounds,* 186 F.3d 210 (2d Cir. 1999) ("in order for meetings in New York which are subsequent to the formation of the contractual relationship to confer jurisdiction, the meetings must be essential to the business relationship or at least substantially advance it.").  See also *United Computer Capital Corp. v. Secure Products*, 218 F.Supp.2d 273, 279 (N.D.N.Y. 2002) citing *Kahn Lucas Lancaster* and *Cooper, Robertson & Partners, LLP v. Vail*, 143 F.Supp.2d 367, 372 (S.D.N.Y. 2001) ("a single meeting in New York will rarely provide the basis for jurisdiction pursuant to § 302(a)(1), especially when that meeting does not result in the execution of a contract").

Nor were Begley's alleged activities at this meeting purposeful or substantially related to the transaction (Dover's investment with HC Securities) and Dover's claim.  Accordingly, the Moving Defendants are not subject to personal jurisdiction in New York.

**The Purported "Begley-Morrow Theft":**

As to the purported Begley-Moore Theft, there is no allegation that Dover met with, or transacted any business with either Begley or TOBA in New York.  To the contrary, Dover alleges that Begley and Morrow met in Singapore where they discussed a business venture (¶44).  The only New York centric allegation is that Dover agreed to enter into a business venture based

upon the oral representations made in Singapore, and correspondence sent from Georgia (presumably from Begley) and New York (presumably from Morrow) (¶46).  In reliance on the oral representations and correspondence, Dover states that it wired $900,000 to TJ Morrow PC (¶44) (presumably from Singapore to New York).  Dover does not allege the existence of any contract, or its terms, among itself, Begley and Morrow.  Nor does Dover state the purported representations made to Dover, or whether those representations were made by Begley or Morrow, individually or jointly, in an individual capacity or for a corporation.

There is a total absence of allegations setting forth any basis for long-arm jurisdiction over the Moving Defendants.  No such basis exists and this Court should dismiss all of Dover's causes of action against the Moving Defendants pursuant to F.R.C.P. 12(b)(2).

**POINT II**

**THE ACTION SHOULD BE DISMISSED AGAINST THE MOVING DEFENDANTS BECAUSE THE COMPLAINT FAILS TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Dover seeks damages for: (i) common law fraud; (ii) breach of fiduciary duty; (iii) breach of contract against HC Securities and HC Group; (iv) breach of contract against Begley and Morrow; (v) unjust enrichment; (vi) violation of section 10(b) of the Securities Exchange Act of 1934 and rule 10b-5 of the Securities Exchange Commission; (vii) conversion against all defendants except Assemi; and (viii) conspiracy.  As to each of these causes of action Dover fails to state a claim upon which relief can be granted against any of the Moving Defendants.

To avoid dismissal pursuant to F.R.C.P. 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do….  Factual allegations must be enough to raise a right to relief above the speculative level…."  See *Bell Atlantic Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 <u>Moore's Federal Practice</u> § 12.34[1][b] (Matthew Bender 3d ed.) at 12-79 (<u>quoting</u> *Campbell v. San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)); see also *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d, 771 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995).

Dover failed to allege the necessary elements of any of these causes of action against the Moving Defendants, nor can it offer evidence to support any of these claims against them.

**A.      First Cause of Action – Common Law Fraud:**

To allege fraud, the party must state with particularity the circumstances constituting the fraud (see F.R.C.P. 9(b)). Under New York law, [8] the essential elements of fraud are the representation of a material fact, falsity, scienter, deception, reliance and injury. *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259 (1958); *Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 698 N.Y.S.2d 615, 621 (1999).

**The Purported "Hartsfield Theft":**

Nowhere in the complaint does Dover allege that the Moving Defendants made untrue representations of fact, let alone that Dover relied on such representations to its detriment. The allegations that Dover makes are not specific, but rather are cloaked in obfuscation. For example, Dover asserts that it took Assemi's advice in investing $6.75MM with HC Securities (¶17). Then Dover alleges that HC Securities, in order to win Dover's business (for the money that Dover had apparently already invested with HC Securities in reliance upon Assemi's advice who, the Complaint alleges, was involved in the earlier theft by A.B. Watley, Inc., of $3.25MM of Dover's money and held no licenses as an investment professional), claimed to have

---

[8] Throughout this memorandum of law, Moving Defendants rely upon New York law because Dover elected, however inappropriately, to invoke the jurisdiction of this Court. Moving Defendants reserve their right to argue that the law of another state or country governs Dover's claims under New York's conflict of laws rules.

substantial experience in highly successful foreign and domestic project financing ventures (¶18).

Only after allegedly investing $6.75MM with HC Securities does Dover allege any misrepresentations by HC Group, Lovett and Begley.  It is impossible to tell which of the alleged misrepresentations Dover attributes to which of the defendants because, in most cases, Dover lumps multiple allegations into each paragraph and then attributes the allegations to several defendants or makes no attribution at all (see, *e.g.*, ¶¶ 18, 20, 21, 23 and 24).  It is clear is that Dover does not allege the essential elements of fraud by the Moving Defendants.

**The Purported "Begley-Morrow Theft":**

As with the "Hartsfield Theft," in connection with the "Begley-Morrow Theft" Dover does not allege that the Moving Defendants made untrue representations of fact upon which Dover relied to its detriment.  In fact, there are no allegations involving Lovett or HC Group.

Dover alleges that Begley and Morrow flew to Singapore in the summer of 2006, where they discussed a new business venture (¶44).  But missing from the complaint is the allegation that any of the statements made at the meeting were false.[9]  Dover claims it relied upon the oral representations made in Singapore and correspondence sent from Georgia and New York in agreeing to loan $900,000 to the new venture which Dover wired to TJ Morrow, PC. (¶46).  There is no specificity, Dover does not say what the oral and written representations were, who made them, or that they were false.

Dover fails to allege the essential elements of fraud against the Moving Defendants.  Dover's first cause of action for fraud should be dismissed against the Moving Defendants because the Complaint fails to state a cause of action against them.

---

[9] Dover's only allegation of a misrepresentation (or actually a failure to disclose) is that "[a]s a trained attorney, [] Morrow knew that his employment by [HC Securities] would have had a material effect on Dover's willingness to loan funds to the new venture." (¶45).  This allegation pertains to Morrow alone.

**B.    Second Cause of Action – Breach of Fiduciary Duty:**

Under New York law, a fiduciary relationship exists between an investor and his/her financial advisor where the financial advisor has discretionary authority to manage the funds invested.  See *Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 809 N.Y.S.2d 270, 272 (3d Dep't 2006) (citing *Rasmussen v. A.C.T. Environmental Services*, 292 A.D.2d 710 (3d Dep't 2002) and *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005)).

Dover makes no allegations against the Moving Defendants in this cause of action. Dover only specifies acts allegedly committed by Morrow, Assemi and the "Hartsfield defendants" (where "Hartsfield defendants" is not defined, but "Hartsfield" is defined as HC Securities and does not include HC Group, a once similarly named but wholly unrelated company).  Dover alleges that "defendants Morrow and Hartsfield chose to abuse their positions of trust and misappropriate Plaintiff's money" (¶66).  This cause of action should be dismissed against the Moving Defendants.

Even assuming that Dover somehow intended that this cause of action be directed against the Moving Defendants, Dover has failed to state a cause of action.  There is no showing that any of the defendants actually breached a fiduciary duty, if any existed in the first place.  Dover does not particularize how any of the defendants made investment recommendations that deviated from the standard of care owed by an investment advisor.  There is simply no factual support for this purported cause of action.

With respect to the purported duty of Morrow to Dover, because he "represented himself to be plaintiff's counsel," even if an attorney/client relationship existed between Dover and Morrow, that relationship does not transitorily impose a fiduciary duty upon the other defendants.

11

**C.      Third Cause of Action – Breach of Contract Against HC
        Securities and HC Group:**

Dover fails to allege the essential elements of a breach of contract, which are: "(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and, (4) damages resulting from the breach." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999)); see also *Sylmark Holdings Ltd. v. Silicone Zone International, Ltd.*, 783 N.Y.S.2d 758, 769 (Sup. Ct. N.Y. Co. 2004)) ("To establish a breach of contract claim, the plaintiffs must allege the specific terms of the agreement, the consideration, the plaintiffs' performance, and the defendants' breach of the agreement.") (citing *Furia v. Furia*, 116 A.D.2d 694, 498 N.Y.S.2d 12 (2d Dept. 1986)).

Dover alleges that the "Defendants" (without specifying which ones), entered into a written agreement (without specifying the terms of the written agreement or attaching a copy to the Complaint), regarding Dover's investment (¶68), presumably referring to the funds invested with HC Securities (¶17).  Dover does not say whether HC Group was a party to the contract, whether HC Group received any consideration, whether Dover performed its obligations, if any, or if HC Group breached an obligation.

This cause of action for breach of contract should be dismissed against HC Group.

**D.      Fourth Cause of Action – Breach of Contract Against Begley
        and Morrow:**

Again Dover fails to state a cause of action for breach of contract.  This time the central allegations materially contradict earlier allegations.

Dover implies that it delivered $900,000 to Begley and Morrow jointly (¶¶ 71 and 72). But Dover specifically alleged that it "wired $900,000 to the 'Escrow & Clients Funds Mgt Account' of TJ Morrow, PC, 'Attorneys-at-law'" (¶46).  Obviously Begley had no control over funds deposited in Morrow's attorney escrow account.

12

Nor does Dover allege that Begley entered into a contract with Dover, that Begley received any consideration, or that Begley breached any contractual obligation.  This cause of action should be dismissed against Begley.

**E.      Fifth Cause of Action – Unjust Enrichment:**

Dover purports to assert its unjust enrichment claim against all defendants.  Again, Dover refers to the "Defendants" without identifying which defendants were unjustly enriched.

To establish an unjust enrichment claim under New York law, a claimant must prove that: (i) a party has received a benefit; and (ii) an injustice would result if the respondent retained the benefit.  See *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)  (recovery for unjust enrichment is permissible under New York law when and because acts of parties or others have placed in possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he or she ought not to retain it, and which in justice and fairness belongs to another).

A review of the allegations pertaining specifically to this cause of action (¶¶ 74-78) suggest that Dover's position is that all of the all of the defendants have been enriched by $4,150,000 ($3,250,000 for the purported "Hartsfield Theft" plus $900,000 for the purported "Begley-Morrow Theft").  But the prior allegations do not support joint liability among all the defendants for the sum of the damages claimed by Dover as to both transactions.  Nor does the Complaint state that any of Dover's funds, either invested with HC Securities or TJ Morrow, PC, are in the hands of the Moving Defendants.  This cause of action should be dismissed.

13

F.    **Sixth Cause of Action – Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission:**

Dover does not claim that its investment with HC Securities was in a "Security" governed by the Securities Exchange Act of 1934 or Rule 10b-5. That failure fundamentally undermines this cause of action and warrants dismissal.

Even if the Securities Exchange Act of 1934 and Rule 10b-5 did apply, the allegations fail to satisfy the elements of a cause of action under Rule 10b-5. The generally accepted elements of a claim under Rule 10b-5 include: (i) scienter; (ii) reliance; (iii) causation; and (iv) injury.[10] The essential elements are similar to a claim for fraud (a misrepresentation of fact, known to be false, made with the intent of misleading the recipient, reliance by the recipient, and damages), and must therefore be plead with specificity pursuant to F.R.C.P. 9(b).

While Dover purports to assert this cause of action against all defendants, the focus is solely on HC Securities. Dover does not assert the elements of this cause of action against the Moving Defendants. Dover states, in essence, that: (i) Assemi misrepresented that HC Securities would invest Dover's money in a non-depletion account so that Dover's principal would not depreciate (¶81); (ii) that Assemi intentionally and/or recklessly omitted to inform Dover of

---

[10] See, *e.g.*, *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 280 (3d Cir.), *cert. denied* 506 U.S. 934 (1992) (a false representation of a material fact, the defendant's knowledge of its falsity and his or her intention that the plaintiff rely on it, plaintiff's reasonable reliance, and plaintiff's resulting loss); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989) (an untrue statement or an omission of a material fact made in connection with a securities transaction with intent to mislead which caused the plaintiff's loss); *Rousseff v. E.F. Hutton Co., Inc.*, 843 F.2d 1326, 1329 (11th Cir. 1988) (misstatement or omission of a material fact made with scienter on which the plaintiff relied that proximately caused his injury); *Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618, 623 (1st Cir. 1988) (must prove, in connection with the purchase of a security, that the defendant, with scienter, falsely represented or omitted to disclose a material fact upon which the plaintiff justifiably relied); *Zlotnick v. TIE Communications*, 836 F.2d 818, 821 (3d Cir. 1988) (false representation of a material fact, defendant's knowledge of its falsity and his intention (or recklessness) that plaintiff rely on it, and a plaintiff's reasonable reliance thereon and resultant loss); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985) (in connection with the purchase or sale of securities, the defendant, acting with scienter, made a material misrepresentation or omission and plaintiff's reliance caused him injury); *Warren v. Reserve Fund, Inc.*, 728 F.2d 741 (5th Cir. 1984) (misrepresentation, omission, or other device; purchase or sale in connection therewith; scienter; materiality; justifiable reliance or due diligence; and resulting damages).

material facts (¶83); (iii) that HC Securities, Lovett, Banzhaf, Reichardt and Begley intentionally took steps to mislead and deceive Dover as to the existence of insurance and/or fidelity bond securing Dover's investment and that Dover's funds would be invested in AA-rated bank notes (¶84); (iv) that Dover relied upon these representations (¶88); and (v) that Dover was damaged.

The Complaint is fatally flawed because it does not assert (or at least does not assert with specificity) scienter on the part of the Moving Defendants, and does not allege causation.  This cause of action should be dismissed against the Moving Defendants.

**G.    Seventh Cause of Action – Conversion:**

Dover failed to plead a cause of action for conversion against the Moving Defendants and even if it had, as to the purported "Hartsfield Theft," Dover is time barred.

Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.  See *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 827 N.Y.S.2d 96, 100 (2006).  See also *Hoffman v. Unterberg*, 9 A.D.3d 386, 780 N.Y.S.2d 617, 619 (2d Dep't 2004).

The allegations of a cause of action for conversion are: (i) the character of the parties; (ii) that title to the property converted is in plaintiff's name or that the plaintiff is entitled to immediate possession; (iii) a full description of the property alleged to have been converted; (iv) the conversion of the property by the defendant; (v) the value of the property converted; (vi) when the property came lawfully into the defendant's possession, a demand for the property's return by the plaintiff and a refusal to return it by the defendant; and (vii) damages.  See, *e.g.*, 2 Bender's Forms of Pleading of the State of New York §14, p. 14-17 (Rel. 107-10/2007).

With respect to the purported "Hartsfield Theft," Dover has not alleged that the Moving Defendants were in possession of Dover's funds or that any of them converted Dover's funds. To the contrary, Dover alleges that it invested its funds with HC Securities (¶¶ 17, 95), that HC

15

Securities "diverted at least $3,250,000" of Dover's funds (¶97), and that as a "direct and proximate result of [HC Securities'] conduct," Dover has been injured (¶98). Thus, there is no allegation that the Moving Defendants converted any of Dover's funds.

Dover is time barred because it demanded (of HC Securities) the return of all of its funds at least as early as November 16, 2004 (¶30). C.P.L.R. § 214(3) sets a three year statute of limitation on commencing "an action to recover a chattel or damages for the taking or detaining of a chattel." Thus, the statute of limitations on Dover's conversion claim expired at least by November 16, 2007, three months **before** Dover filed its complaint. Dover's conversion claim with respect to the purported "Hartsfield Theft" must be dismissed.

As to the purported "Begley-Morrow Theft," Dover also failed to plead the necessary elements and, in fact, alleges that it deposited its funds in Morrow's attorney escrow account (¶46). Dover contradicts itself, alleging that it "placed money with Defendants Begley and Morrow" (¶99), and Dover "remitted $900,000 million [sic] to Defendants Begley and Morrow" (¶100). While general allegations of conversion are usually sufficient, a more specific statement is required if there is an apparent inconsistency between the general allegations and the other facts stated in the complaint. See *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500-501 (4th Dep't 1981).

Dover fails to allege that Begley possessed or that Begley converted Dover's funds. There is no basis for this cause of action against the Moving Defendants. Dover's conversion cause of action against the Moving Defendants should be dismissed.

**H.    Eighth Cause of Action – Conspiracy:**

There is no substantive tort of civil conspiracy under New York law. *Green v. Davies*, 182 N.Y. 499 (1905); *Riverbank Realty Co. v. Koffman,* 179 A.D.2d 542, 579 N.Y.S.2d 870 (1st Dept. 1992); *SRW Assocs. v. Bellport Beach Prop. Owners,* 129 A.D.2d 328, 517 N.Y.S.2d 741,

744 (2d Dept. 1987).  A mere conspiracy, or agreement, to commit a tort is never of itself a cause of action.  *Gouldsbury v. Dan's Supreme Supermarket, Inc.,* 154 A.D.2d 509, 546 N.Y.S.2d 379, 380-381 (2d Dept. 1989), *appeal denied,* 75 N.Y.2d 701, 551 N.Y.S.2d 905 (1989).  Dover's conspiracy cause of action should be dismissed.

## POINT III

### THE ACTION SHOULD BE DISMISSED AGAINST THE MOVING DEFENDANTS BECAUSE THE SOUTHERN DISTRICT OF NEW YORK IS NOT A PROPER VENUE

Venue is not proper in the Southern District of New York.  The proper venue for this action is the Northern District of Georgia.  Accordingly, this action should be dismissed pursuant to F.R.C.P. 12(b)(3).

Dover's basis for venue is where "all or part of the factual events occurred…" (¶13).  In a civil action where jurisdiction is based upon diversity, venue is governed by 28 U.S.C. §1391(a), which provides, in relevant part, that the action may be brought only in:

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated …

By far the most "substantial part of the events or omissions giving rise to the claim occurred" in Alpharetta, Georgia, not New York.

By whatever measure, the most substantial events giving rise to this action occurred in Georgia.  Dover invested $6.75MM with HC Securities, that is 7 ½ times Dover's $900,000 loan deposited with TJ Morrow PC.  Dover seeks the return of $3.25MM from its investment with HC Securities, more than 3½ times what it seeks in connection with the $900,000 loan deposited with TJ Morrow PC.

Compared transactionally, Georgia is again at the center of this action.  All of the events alleged with respect to the purported "Hartsfield Theft" occurred in Georgia.  That is: (i) where HC Securities, HC Group and TOBA are alleged to maintain their principal places of business; (ii) where Stephen J. Lovett, John H. Banzhaf, Delbert D. Reichardt and Thomas O. Begley are alleged to reside; (iii) where Dover deposited $6.75MM with HC Securities; and where Dover's Ms. Yap visited to discuss Dover's investment with HC Securities.  With the exception of a single meeting in New York (discussed above), there is no allegation of a New York connection with the "Hartsfield Theft."  As to the purported "Begley-Morrow Theft," the most significant events are alleged either to have occurred outside New York or are not alleged to have occurred in any specific location (although most appear to have taken place outside New York).  Dover alleges: (i) that Begley (presumably from Georgia) suggested a new business venture to be conducted through TOBA (in Alpharetta, Georgia); (ii) that Begley and Morrow met in Singapore to discuss the business venture; and (iii) that based upon representations made in Singapore and correspondence sent from Georgia (presumably from Begley) and New York (presumably from Morrow), Dover agreed to deposit $900,000 with TJ Morrow PC.

Measuring by dollars, occurrences or any other metric, venue is ***not*** proper in the Southern District of New York.  The Georgia District Court has a far greater interest in this action.  The only proper venue is the Northern District of Georgia.

## POINT IV

## ALTERNATIVELY, THE ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF GEORGIA WHERE THE EVENTS OCCURRED, THE MAJORITY OF THE WITNESSES RESIDE, THE DOCUMENTS ARE LOCATED AND WHERE THE INTERESTS OF JUSTICE CAN BEST BE SERVED

Assuming, *arguendo*, that venue was technically proper in the Southern District of New York, it would still be an inconvenient forum meriting a transfer to a more convenient location.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[11]

Some factors to consider in determining whether a transfer of venue is appropriate are: (i) the plaintiff's choice of forum; (ii) the convenience of the witnesses; (iii) the location of relevant documents and relative ease of access to sources of proof; (iv) the convenience of parties; (v) the locus of operative facts; (vi) the availability of process to compel the attendance of unwilling witnesses, and (vii) the relative means of the parties. See, *D.H. Blair & Co, Inc. v Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006), *on remand*, 2007 WL 259931 (S.D.N.Y. Jan. 29, 2007). See also *Harris v. Brody*, 476 F.Supp. 2d 405 (S.D.N.Y. 2007) (noting the above factors and also: (i) the comparative familiarity of each district with the governing law; and (ii) judicial economy and the interests of justice).

The facts alleged by Dover clearly call for the transfer of this case to the Northern District of Georgia. To start with, the plaintiff is a Hong Kong corporation with its principal place of business in Singapore. Dover has not alleged that it has any connection to the Southern

---

[11] As set forth above in Point III, the Moving Defendants also move to dismiss this case because this Court is not a proper venue (pursuant to F.R.C.P. 12(b)(3). Should this court determine that venue is proper in the Southern District of New York, defendants move to transfer venue pursuant to 28 U.S.C. 1404(a).

District of New York nor, to the Moving Defendants' knowledge does Dover have any connection to New York. Of the eleven defendants, seven are alleged to reside or have a place of business in Alpharetta, Georgia (Dover omits to allege any place of business for Mansell Capital Partners, LLC, but presumably intended to allege that it, too, has a principal place of business in Alpharetta, Georgia). Defendant Assemi is alleged to reside in California (but upon information and belief resides outside the United States), defendant Morrow in North Carolina. Only defendant Morrow's law firm, TJ Morrow PC, is alleged to have a place of business in New York (even though Mr. Morrow himself is not alleged to reside within New York). Further, notwithstanding the claim asserted in paragraph 13, the vast majority of the facts alleged by Dover as to both the "Hartsfield Theft" and the "Begley-Morrow Theft" occurred in Georgia.

### A.    Plaintiff's Choice of Forum:

Dover alleges no basis for its choice of the Southern District of New York as the venue for this action. Since Dover's principal place of business is in Singapore and only TJ Morrow PC is alleged to have a place of business in New York (again, even though Mr. Morrow is alleged to reside in North Carolina) it appears that all off the relevant witnesses, documents and any other evidence is located outside New York. In light of the facts alleged by Dover, we can only conclude that Dover's choice of the Southern District of New York as the venue for this action was for the convenience of its counsel, whose office is located in New York County. The location of Dover's counsel is not a material consideration in determining whether to transfer venue. See *Zepherin v. Greyhound Lines Inc.*, 415 F.Supp.2d 409 (S.D.N.Y. 2006).

### B.    Location of the Parties, Witnesses and Documents:

According to the complaint, the great majority of the parties (and presumably non-party witnesses) reside in Georgia. Upon information and belief, Dover's principal, Ms. Yap, resides in Singapore. Upon information and belief, Mr. Assemi resides in Switzerland. Mr. Morrow,

according to the complaint resides in North Carolina. Other potential witnesses reside in Canada. The Moving Defendants know of no witnesses who reside in New York. Presumably the relevant documents are located with the parties or non-party witnesses, none of whom, to the knowledge of the Moving Defendants, are located in New York.

With the majority of the witnesses located in Georgia, the plaintiff located in Singapore, and no witnesses located in New York, proceeding with this action in the Southern District of New York will be an inconvenience to everyone and a convenience to no one. The proper venue for this action to proceed is the Northern District of Georgia.

**C.      Locus of Operative Facts:**

The vast majority of the operative facts occurred in Georgia. That is where all of the relevant events occurred with respect to the "Hartsfield Theft" and where many of the events occurred with respect to the "Begley-Morrow Theft." Other operative events are alleged to have occurred in Singapore while very few of the operative events occurred in New York.

**D.      The Availability of Process to Compel the Attendance of**
**         Unwilling Witnesses:**

From the complaint, it appears that the only potential non-party witnesses reside outside New York. Dover alleges meetings with employees of HC Securities, who, although not named, presumably reside in or near Alpharetta, Georgia. The complaint also references the Canadian attorney, William Kerr (¶31), and an Ontario businessman, Gordon Mascarenhas (¶34). Begley, TOBA, Lovett and HC Group are aware of no witnesses located in New York.

Since the only potential non-party witnesses (as well as most of the parties) are located in Georgia, this factor weighs heavily in favor of transferring this action to Georgia.

**E.      The Relative Means of the Parties:**

This factor too weighs heavily in favor of transferring this action to Georgia.  Plaintiff is a Hong Kong company, apparently with vast wealth given its sizable investments alleged in this action.  The defendant are, on the other hand, of significantly limited means.

But this factor again balances heavily in favor of transferring this action to Georgia for another reason.  While the defendants will incur substantial expenses and inconvenience by having to travel to New York in connection with this matter, there is no benefit to Dover to counter the significant hardship to the defendants because Dover has no connection to New York.  Dover is a Hong Kong company with a principal place of business and whose principal, Ms. Yap, resides in Singapore.  Thus, there is no convenience to keeping this action in New York because Dover's principal and other representatives will have to travel from Singapore and can just as easily (and perhaps more easily) reach Atlanta, Georgia, as they can reach New York.

Once again, the benefits of transferring this action to the Northern District of Georgia are great, and there is no comparative benefit to keeping this action in New York.

**F.      The Comparative Familiarity of Each District With The
          Governing Law:**

This case belongs in the Northern District of Georgia.  Notwithstanding Dover's assertion that this is a securities case, it is not.  In truth, Georgia and Delaware law applies to this case, not New York law.  With respect to the "Hartsfield Theft," the operative events occurred in Georgia, not New York.  With respect to the "Begley-Morrow Theft," although not alleged in the complaint, the vehicle that Dover allegedly invested in was a Delaware Business Trust named the "Ambrose Investment Trust," and the agreement for Dover's investment was among Dover (Hong Kong), the Ambrose Investment Trust (Delaware) and TOBA (Georgia).

Thus, a federal district court sitting in Georgia will be better equipped to administer and try this case.

**G.    Judicial Economy and the Interests of Justice:**

While some New York Southern District decisions have determined that judicial economy and the interests of justice is considered as a separate factor (e.g. *Harris v. Brody*, 476 F.Supp.2d 405), other courts treat this factor as based upon the totality of the circumstances.  See *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 183 (S.D.N.Y. 1995), *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F.Supp. 1247, 1250-1251 (S.D.N.Y. 1995).

It is worth noting that an element of this factor includes whether the transferor court has personal jurisdiction over the defendants.  Thus, where the issue of personal jurisdiction of the transferor court is a difficult one (as is the case here), transfer to a district where personal jurisdiction is certain may be in the interest of justice because it may conserve judicial resources by allowing the transferor court to avoid addressing the personal jurisdiction issue (as it will here).  See 17 Moore's Federal Practice §111.13[1][n] (Matthew Bender 3d ed.).

So this factor also weighs in favor of transfer.

**CONCLUSION**

In light of the forgoing, defendants Thomas O. Begley, Thomas O. Begley & Associates, Stephen J. Lovett and Hartsfield Capital Group respectfully submit that the Court should grant their motion: (a) to dismiss pursuant to (i) F.R.C.P. 12(b)(2) for lack of personal jurisdiction; (ii) F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted and (iii) F.R.C.P. 12(b)(3) for improper venue; or alternatively (b) to transfer venue pursuant to 28 U.S.C. §1404(a).

23

Dated:  New York, New York
       June 13, 2008

                        PHILLIPS NIZER LLP


                         _s/ Jeremy Richardson_____
                        Jon Schuyler Brooks (JB 7218)
                        Jeremy D. Richardson (JR 7706)
                        Attorneys for Defendants
                        Thomas O. Begley, Thomas O. Begley & Associates
                        Stephan J. Lovett and Hartsfield Capital Group
                        666 Fifth Avenue
                        New York, New York 10103-0084
                        (212) 977-9700


To:     Law Office of Thomas M. Mullaney
         Attorneys for the Plaintiff
         708 Third Avenue, Suite 2500
         New York, New York 10017
         (212) 223-0800

         Eisenberg Tanchum & Levy
         Attorneys for the Defendants
         John H. Banzhaf, Delbert D. Reichardt and
         Argosy Capital Securities, Inc. (f/k/a Hartsfield Capital Securities, Inc.)
         675 Third Avenue, Suite 2900
         New York, New York 10017
         (212) 599-0777

         Mr. TJ Morrow
         2501 Blue Ridge Road, Suite 150
         Raleigh, North Carolina 27607
         (919) 863-4328

         Mr. Alain Assemi
         15650 Vinyard Blvd. STE A131
         Morgan Hill, California 95037