UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOVER LIMITED,

                     Plaintiff,

      vs.

ALAIN ASSEMI, et al.,

                     Defendants.
------------------------------------------------------------X
ALAIN ASSEMI,

                     Counter-Claim Plaintiff,

      vs.

DOVER LIMITED,

                     Counter-Claim Defendant.
------------------------------------------------------------X

08-CV-1337 (LTS)(JCF)

**DECLARATION IN SUPPORT
OF DEFAULT**

     I, Wendy Sui Cheng Yap, a Director of Plaintiff Dover Limited ("Dover"), make this declaration pursuant to 28 U.S.C. § 1746 and state under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

     1.     In 2003, Dover began having discussions with Defendant Hartsfield Capital Securities, Inc. and Hartsfield Capital Group ("Hartsfield") (they did not distinguish between the two) about investing in foreign and domestic financing ventures.

     2.     Defendants Lovett, Begley, Banzhaf and Reichardt all made representations to me about the investment strategy of Mansell Capital Partners ("Mansell"), orally and in writing, all of which turned out to be false.

3. According to Hartsfield, Mansell was to serve as a single purpose investment vehicle managed and directed by Hartsfield. All funds invested with Mansell were to be used to purchase short-term bank and corporate notes of significant security. Mansell's strategy was presented to Dover in a Hartsfield Capital Securities, Inc. document on June 27, 2003. A copy of the Hartsfield Capital Securities "Project Finance Custodial Responsibilities" is attached as Ex A.

4. According to Defendants Assemi, Lovett, Begley, Banzhaf and Reichardt, the risk associated with investing through Mansell was minimal. The money was only to be used for purchasing short-term AA-rated notes, issued by AA-rated institutions. Representations were also made that the invested funds would be backed by a $25MM fidelity bond. Invested funds were supposed to be maintained in an attorney's escrow account, and released only for investment in the described securities. Moreover, Dover was told that it could withdraw its money on demand, and the decision on whether or when to withdraw the money was Dover's alone. A copy of a Mansell Capital Partners Board of Directors Resoultion, dated June 30, 2003, and signed by Defendants Lovett and Assemi, is attached as Exhibit B. A copy of a letter from Defendant Begley, dated October 27, 2003, describing Mansell's function is attached as Ex. C

5. Based on these representations, Dover wired money to Hartsfield's clearing firm, May Davis, for investing through Mansell. In typical Ponzi-scheme fashion, Mansell did return some of my money to me as "interest," and so it, Hartsfield, Lovett, Begley, Banzhaf and Reichardt still have $1,498,387 of Dover's funds, exclusive of the promised interest.

6. They never purchased the short-term notes with Dover's funds as they promised. Instead, they distributed these funds to themselves and their cronies, as well as sending funds to an attorney in Canada, William Kerr. As it was belatedly revealed to me, he allegedly would

invest the funds in an unspecified manner with an individual named Gordon Mascarenhas and obtain desirable returns. Mr. Mascarenhas is a far cry from an AA-rated financial institution of course, and this alleged investment strategy is not what I had bargained for, nor does it seem to me to remotely approach handling Dover's funds with the standards charged to a fiduciary.

7. Mr. Mascarenhas and/or Mr. Kerr, it was also later revealed to me, transferred Dover's funds to an unidentified bank in Marbella, Spain. Throughout 2003-04, however, Dover was told only that unanticipated delays had been encountered, and it would take more time before Mansell's investment projects could begin.

8. In July 2004, Dover met with Defendant Begley in New York at the Tribeca Grand Hotel. During the meeting, Dover was told that its money was secure and substantial returns were being generated from its investment. Dover was told that leaving its money in Mansell's hands would lead to continued distributions of profitable returns. Dover relied on these representations.

9. Not long after the July 2004 meeting, Dover requested that $1.5MM of its invested funds be returned. Dover specifically contacted Defendant Begley about the return of these funds. Defendant Begley responded that he would have it taken care of, and the money would be returned.

10. Two weeks later, Dover again contacted Begley to determine why the money had not arrived. This time, Begley claimed that a minor technicality had caused a problem in transmitting the funds, but rest assured he would take care of the technical problem.

11. When the money had still not arrived by September, Dover began demanding that the money be returned. Despite repeated promises that the money was forthcoming, it was not. Dover requested the return of its funds on multiple occasions, including on November 16th and

December 13th in 2004, and February 18th, March 1st, April 21st, June 7th, August 19th, September 19th, September 29th, and October 11th in 2005.

12. For example, on November 12, 2004 Defendant Banzhaf promised that he would be receiving Dover's funds for immediate remittance to Dover. That promise turned out to be false. A copy of Defendant Banzhaf's e-mail dated November 12, 2005 is attached as Exhibit D.

13. Then, on February 18, 2005, Defendant Banzhaf informed me that "we" (he did not distinguish between Hartsfield and Mansell) anticipated receiving Dover's funds earlier that week, which never materialized. A copy of Defendant Banzhaf's e-mail dated February 18, 2005 is attached as Exhibit E.

14. As late as August 31, 2005, Defendant Begley wrote Dover on Hartsfield Capital Group letterhead and claimed that Mansell had Dover's $3.25MM in its Dover-dedicated account. A copy of Defendant Begley's letter dated August 31, 2005 is attached as Exhibit F.

15. In the unlikely event that it is, Mansell and Lovett, Banzhaf, Begley and Reichardt have refused to remit it. If it is not, Mansell and those defendants improperly converted my funds

I declare under the penalty of perjury that the foregoing was true and correct.

Executed on ~~June~~ July 3rd, 2008 in Singapore

_____
WENDY SUI CHENG YAP