## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------X
DOVER LIMITED,                          :
                                        :
                 Plaintiff,             :        08-CV-1337 (LTS)(JCF)
                                        :
          vs.                           :        ECF Case
                                        :
ALAIN ASSEMI, et al.,                   :
                                        :
                 Defendants.            :
----------------------------------------X
ALAIN ASSEMI,                           :
                                        :
                                        :
          Counter-Claim Plaintiff,      :
                                        :
          vs.                           :
                                        :
DOVER LIMITED,                          :
                                        :
          Counter-Claim Defendant.      :
                                        :
----------------------------------------X
```

**PLAINTIFF DOVER LIMITED'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS ALAIN ASSEMI, HARTSFILED CAPITAL GROUP, STEPHAN J. LOVETT, THOMAS O. BEGLEY AND, THOMAS O. BEGLEY & ASSOCIATES' MOTION(S) TO DISMISS PURSUANT TO: i) F.R.C.P. 12(b)(2), (3) AND (6); ii) TO TRANSFER PURSUANT TO RULE 1404(a), AND iii) DEFENDANTS HARTSFIELD CAPITAL SECURITES, INC., DELBERT D REICHARDT AND JOHN BANZHAF'S JOINDER IN SAID MOTIONS**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................... 2

I. STATEMENT OF FACTS ............................................................... 2

A. Dover Pled Viable Causes of Action Against Each ........................... 2

   1. Dover's Complaint Makes Sufficient Allegations of Movants' ............ 3

B. Co-Conspirators' Own Pleadings Show Claim Upon Which Relief May Be Based ....... 4

C. The Begley-Morrow Theft Adequately Pled ................................... 5

D. Personal Jurisdiction Lies Against Each Defendant ......................... 5

E. Discovery Established That There Was No Legal Distinction Between Or Among Group, Argosy, Begley, Lovett, Reichardt, and Banzhaf ........................... 8

   1. Begley's Testimony Shows Viability of Dover's Claims ................. 9

   2. Lovett's Testimony Shows Viability of Dover's Claims ................ 10

   3. Banzhaf's Testimony Shows Viability of Dover's Claims ............... 11

   4. Mansell Was a Sham Entity, Establishing Liability and Jurisdiction .... 12

II. LEGAL ARGUMENT ................................................................ 15

A. Standard for this Motion ................................................... 15

B. Defendants Motion to Dismiss for Lack of Jurisdiction Should Be Denied ..... 16

C. Defendants' Motion to Dismiss for Failure to State a Claim Should Be Denied ..... 17

   1. Elements of Common-Law Fraud Adequately Pled ....................... 17

   2. Securities Fraud Claim Well-Pled Against Movants .................... 19

      a. The Complaint adequately pleads scienter ........................ 19

      b. The Complaint adequately alleges motive and opportunity ......... 20

      c. The Complaint adequately alleges Movants' ...................... 21

      d. The Complaint adequately alleges loss causation and reliance ..... 21

**e. The Complaint pleads (securities) fraud with sufficient particularity** ................... 21

**f. Both direct and control person liability viable against Begley, Lovett, Banzhaf and Reichardt** ............................................................................................................................ 22

**3. Elements of Conspiracy Adequately Pled** ...................................................................... 23

**4. Elements of Unjust Enrichment Adequately Pled** ......................................................... 24

**5. Dover's Complaint Adequately Pleads Breach of Contract Against Movants** .......... 25

**6. Dover's Complaint Adequately Pleads Conversion** ..................................................... 25

**7. Dover's Complaint Adequately Pleads Breach of Fiduciary Duty** ............................ 26

**C. Southern District of New York is a Proper Venue and a Convenient Forum** .............. 27

**CONCLUSION** ............................................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**             **Page**

*ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.* ....................... 15

*Air Traffic Conference v. Downtown Travel Center, Inc.* .......................................................... 25

*Bell Atlantic Corp. v. Twombly* .......................................................................................... 14,15

*Best Van Lines, Inc. v. Walker* ................................................................................................ 15

*Brown v. Stinson* ...................................................................................................................... 25

*Carriafielo-Diehl & Associates, Inc. v. D&M Electrical Contracting, Inc.* ................................ 23

*Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo* ............................................ 21

*Cohen v. Rothman-Goodman Management* ................................................................................ 23

*Conway v. Icahn & Co., Inc.* .................................................................................................... 25

*D.H. Blair & Co. v. Gottdiener* ................................................................................................ 15

*DiVittoro v. Equidyne Extractive Indus., Inc.* ......................................................................... 18

*M & T Mortgage Company v. United States Department of Housing and Urban Development* . 17

*Eightway Corp. v. Dime Savings Bank of Williamsburg* ........................................................... 23

*Energy Brands, Inc. v. Spiritual Brands, Inc.* .......................................................................... 15

*Ernst & Ernst v. Hochfelder* .................................................................................................... 18

*Fabry's S.R.L. v. IFT Int'l, Inc.* ............................................................................................... 24

*Ganino v. Citizens Utility Co.* .............................................................................................. 18,19

*Grand River Enters. Six Nations, Ltd. v. Pryor* ....................................................................... 15

*Health and Annuity Funds v. Hudson Svc. Corp.* ..................................................................... 21

*Hoag v. Chancellor* .................................................................................................................. 22

*Hoffman v. Unterberg* .............................................................................................................. 24

*Houbigant, Inc. v. Development Specialists, Inc.* ..................................................................... 15

*Infra* ................................................................................................................ 17

*Initial Public Offering Sec. Litig.* ............................................................. 20, 21

*Kalnit v. Eichler* ................................................................................... 18, 19

*Kelly v. Schmidberger* ................................................................................. 21

*Key Bank of New York v. Grossi* .................................................................. 24

*Lawrence v. Cohn* ......................................................................................... 18

*Litras v Litras* ............................................................................................. 22

*Log On America, Inc. v. Promethean Asset Management L.L.C.* ..................... 14

*Morris v. Castle Rock Entertainment, Inc.* ..................................................... 22

*Nicholson v. Tweedy* ............................................................................... 23, 24

*Novak v Kasaks* ...................................................................................... 19, 20

*PI, Inc. v. Ogle* ........................................................................................ 14, 17

*Podolsky v. Citation Abstract, Inc.* ............................................................... 23

*Schruefer v. Winthorpe, Grant, Inc.* ............................................................. 25

*Schwartz v. Capital Liquidators, Inc.* ........................................................... 24

*Securities and Exchange Commission v. Mansell Capital Partners, III, LLC.* ...... 14, 28

*Shields v. Citytrust Bancorp, Inc.* ............................................................ 18, 19

*Streit v. Bushnell* ..................................................................................... 23, 24

*Suez Equity Inves* ........................................................................................ 21

*Suez Equity Investors, L.P.* ......................................................................... 20

*Trustees of the Bldg. Svc. 32B-J Pension, Health and Annuity Funds v. Hudson Svc. Corp.* ...... 21

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.* ..................... 25

*Vento & Company of New York, LLC v. Metromedia Fiber Network, Inc.* ................. 16

*Vento & Company of New York, LLC v. Metromedia Fiber Network, Inc.* ........... 16, 17

*Vivendi Universal* ................................................................................. 18, 19, 20

Plaintiff Dover Limited ("Dover") respectfully submits this Memorandum of Law in Opposition to Defendants Alain Assemi, Hartsfield Capital Group ("Group"), Stephan J. Lovett, Thomas O. Begley, and Thomas O. Begley & Associates' ("Group Defendants", less Defendant Assemi) Motion(s) to Dismiss and/or Transfer Venue and the Joinder in said Motions filed by Defendants Argosy Capital Securities, Inc. ("Argosy", f/k/a Hartsfield Capital Securities, Inc. or "HCS") Delbert D. Reichardt and John Banzhaf, (referred to as "Movants").

## PRELIMINARY STATEMENT

The Motions to Dismiss should be denied in their entirety because Dover's Complaint alleges each defendant specifically and knowingly committed an act in NY in furtherance of their fraud on Dover, and the complaint states precise allegations of each of the Movant's fraudulent conduct. Moreover, jurisdictional discovery revealed numerous falsehoods in their various affidavits and previous pleadings denying such New York contact. Finally, Movant's request to transfer this lawsuit to Georgia should be denied because the locus of facts is in New York, the majority of identifiable third-party witnesses reside in New York, and the Movants' pleas of poverty ring hollow given the sums that they received from Mansell. New York was perfectly convenient for the defendants when taking Dover's money, and so should be just as convenient when being asked to disgorge their ill-gotten gains.

## I.   STATEMENT OF FACTS

### A. Dover Pled Viable Causes of Action Against Each Movant

The Movants' assertion that the Complaint fails to state a cause of action against them is wishful thinking.  See Memorandum of Law of Hartsfield Capital Group, et al., ("Group Mem."), at 2. To justify its erroneous views, Group misstates a battery of facts in its Memorandum. For example, Group misrepresents that Argosy was unrelated to it, presumably

2

because the clients were less than candid with their attorneys pre-filing.   Publically available documents, however, contradict this claim.

Group also ignores the Conspiracy Cause of Action against them, which would serve to "connect the dots" even if discovery had not developed significant evidence of their direct culpability.   But it did.   Jurisdictional discovery revealed that Argosy's owners, Messrs. Banzhaf and Reichardt, took their marching orders in emptying the Mansell account from Messrs. Lovett and Begley, providing a direct basis of liability.   According to sworn testimony, they all used Mansell as merely a bank account for sundry personal uses, none of which was related to the investment program promised Dover.

Moreover, the relationship between Argosy and Group (and Mansell) was porous, and easily supports going forward based on a theory of vicarious liability.   Group and Argosy (and Mansell) were advertized to the world as one when it suited their purposes of luring "investors", and ought to be held to that standard now.   Dover's allegations against all of the Movants are neatly packaged in one document evidently authored by Defendant Begley, which is one of the many he and his cohorts failed to produce to either Dover or their own attorneys.   Declaration of Thomas M. Mullaney, ("Mullaney Decl."), dated August 18, 2008, at ¶4, Exhibit A (attaching a copy of an agreement between Dover and Group/HCS/Alain Assemi).

### 1.   Dover's Complaint Makes Sufficient Allegations of Movants' Misconduct

The Movants all overlook the Complaint's following allegations of its misconduct in its Motion:

- The Complaint alleges that Argosy was Group's broker-dealer (Cplt, ¶ 17)

- The Complaint alleges that Group incorporated Mansell Capital Partners (Cplt, ¶ 18)

- The Complaint alleges that Lovett (and Banzhaf) falsely represented Mansell's investment purpose (Cplt, ¶ 18)

3

• The Complaint alleges that Lovett falsely represented that he had personally invested funds in Mansell (Cplt, ¶ 20), and that Dover's investment funds were insured (Cplt, ¶ 20)

• The Complaint alleges that Begley falsely represented that Dover could retrieve its funds at any time (Cplt, ¶ 21)

• The Complaint alleges that Lovett falsely represented that Group had experienced "delays" in finding investments (Cplt, ¶ 22) – a function of the fact that Lovett claimed to control Argosy and Mansell through Group

• The Complaint alleges that Group falsely represented that it would maintain Dover's funds in its attorney's insured escrow account, until drawn on by Mansell for investment (Cplt, ¶ 23)

• The Complaint alleges that Lovett, Begley and Banzhaf made additional misrepresentations about Dover's funds (Cplt, ¶ 24)

• The Complaint alleges that Begley (and Argosy) subsequently made a series of additional false representations (Cplt, ¶ 29-32) – including Begley's claim, on Group letterhead, that Mansell had Dover's funds in its possession (Cplt, ¶ 36, 39)

**B. Co-Conspirators' Own Pleadings Show Claim Upon Which Relief May Be Based**

In its Complaint, Dover has sued two businesses with "similar sounding names" as Group puts it, but which Movants claim were unrelated. Argosy has provided no independent basis for its tacit assertion that no claim is stated against it. Argosy did, however, interpose an answer and Cross-Claim against the Group co-defendants and the defaulting Mansell Capital Partners, LLC, based solely on the claims stated in Dover's Complaint. This Cross-Claim is flatly inconsistent with its Motion Joinder, so Argosy can hardly assert now that no claims were stated against it. Answer and Cross-Claim, ¶ 64-65. The Group defendants did not respond to the Cross-Claim. Assemi filed his own motion, based on inapplicable Illinois law, and simply ignores the Complaint's allegations of his unlawful actions.

4

### C. The Begley-Morrow Theft Adequately Pled

Defendant Begley's view that no cause of action is stated against him for the "Begley-Morrow" phase of the fraud (where he and Defendant Thomas O. Begley & Associates functioned without distinction) and conspiracy is hard to understand. His false representations and omissions about his business with Defendant Morrow are quite detailed, and seem clear to the reasonable reader. Cplt, ¶ 41-54. In any event, Defendant Begley's co-conspirator Morrow recently pled that it was Begley who directed two installments of $450,000 apiece to Morrow's escrow account, in this second phase of the Dover fraud. Memorandum of Law in Support of Defendant TJ Morrow's Motion to Dismiss, "Morrow Mem."), at 2. A few of the nine pages of documents that Begley produced in discovery (Group and Lovett produced none) demonstrate the Begley received a significant portion of those funds from Morrow, as he also testified that he had received funds from Mr. Morrow. Mullaney Decl., at ¶4, Exhibit B (attaching copy of TB-0001 -0005); See also Mullaney Decl., at ¶5, Exhibit C, attaching relevant portions of the Transcript of Deposition of Thomas O. Begley, Jr., (Begley Tr."), at p.13-14. Thus Begley does not even attempt to contest that Dover properly alleges that the business venture he and Morrow were touting was a sham, nor that he was an architect of the conspiracy, and main beneficiary.

### D. Personal Jurisdiction Lies Against Each Defendant

Movants' argument that jurisdiction does not lie is borne of pre-discovery ignorance caused by disingenuous clients. Likewise their arguments for change of venue and inconvenient forum fail. They all did and do business in NY when convenient; and certainly did so when looting Dover's account.

First, Defendant Begley almost immediately testified in his deposition that his previously submitted Affidavit in support of his motion was false. Begley Tr., p.24, li.19 - p.25, li.22.

Although he had affirmed that he never lived in New York City, at his deposition he "made a correction" and testified that he was born and raised here. Id. Mr. Begley also testified that he did Mansell-related business with a gentleman named John Mooren, the principal of a company named Belsize. Begley Tr., p.15, li.12-25. Belsize and Mr. Mooren are both located in New York City, according to a motion that Belsize made before this Court. Docket entry # 52. He also admitted, eventually, that he had directed Messrs. Banzhaf and Reichardt to send funds from the Mnasell account to Belsize in New York. Begley Tr., p.47, li.22 – p.49, li.5; p.50, li.9-14.

Mr. Begley also admitted that he had directed funds to his parents, who lived in New York. Begley Tr., p.41, li.22-p. 42, li.5.; p.47, li.15-20. He also admitted that he had done business with May Davis Group, a clearing firm located in New York, and that the "Hartsfield Group entity", which included Mansell, had an account there. Mullaney Decl., ¶6, Ex. D (attaching a letter from Defendant Begley to that effect). Mr. Begley struggled, and failed, to distinguish Group, Argosy ("HCS") and Mansell.

Defendant Begley also met with two representatives from Dover and Defendant Morrow in New York over a two day period to discuss what turned out to be both frauds. Begley Tr., p.30, li.20 – p.32, li.3. In fact, Mr. Begley at one point testified that Mr. Morrow was the architect of the AA-rated note "program" first offered to Dover in 2003. Begley Tr., p.34, li.6-18. Although Mr. Begley later recanted this testimony about Mr. Morrow, Mr. Lovett also elliptically testified that he had discussed the "funding of transactions" with Mr. Morrow. Mullaney Decl., at ¶7, Ex. E, attaching relevant portions of the Transcript of Deposition of Stephan J. Lovett, ("Lovett Tr."), dated Friday, August 1, 2008, at p.55, li. 17 – p. 56, li. 1. Mr. Morrow worked in New York in 2003, and thereafter, and so there is a firm basis to believe that the entire scheme to defraud Dover was hatched in New York.

Next, Defendant Lovett testified that he had met Belsize's Mr. Mooren in New York City, just blocks from this Courthouse, to discuss various matters that allegedly eluded his memory. <u>Lovett Tr.</u>, at p.29, li.18-23; p.30, li.8 – p.31, li.11. Defendant Lovett did remember that it was Defendant Assemi who introduced Mr. Mooren to him. Mr. Lovett also remembered engaging in some business with a company called Success Realty in New York, which evidently slipped his mind at the time of his Affidavit. <u>Lovett Tr.</u>, p.23, li.21-22. Success Realty had filed a lawsuit against a "Hartsfield Capital, Inc" in New York, even though Mr. Lovett had strongly suggested in his Affidavit that the pending litigation was the only one Group had in New York. Mr. Lovett also claimed not to know a company called "AdZone", located here in New York, even though an SEC filing states that "Hartsfield Capital" was its financial advisor. <u>Lovett Tr.</u>, p.44, li.15-18; <u>Mullaney Decl.</u>, at ¶8, Ex. F.

Defendant Banzhaf admitted that he directed a wire of funds from the Mansell account to Defendant Assemi, and that he knew that Defendant Assemi's bank, Sterling National, was located in Manhattan. <u>Mullaney Decl.</u>, at ¶9, Ex. G, attaching relevant portions of the <u>Transcript of Deposition John H. Banzhaf</u>, ("Banzhaf Tr.") dated Thursday, July 31, 2008, at p.161, li. 18 – p. 162, li. 3. Mr. Banzhaf did not attempt to reconcile this testimony with his Affidavit averring a lack of business contact with New York.

As already established by the papers submitted by Dover in its motion for default judgment against Mansell, Mansell sent funds a multiple occasions to New York accounts. <u>Affirmation of Thomas M. Mullaney in Support of Default</u>, ("Mullaney Aff."), ¶3, Ex. A. It was Mr. Banzhaf who effected these transactions. Alain Assemi was the beneficiary of wires from Mansell through Sterling National Bank in New York nearly twenty times in amounts totaling some $400,000. <u>Id</u>. Belsize received thirteen (13) wires from Mansell through Commerce Bank

in New York in an even greater amount over the same period. Id. Mansell did business in New York, which "business" is directly related to the claims of the Complaint, and so the individuals who used Mansell as a tool for their fraud likewise did business in New York.

**E.    Discovery Established That There Was No Legal Distinction Between Or Among Group, Argosy, Begley, Lovett, Reichardt, and Banzhaf**

Discovery in this action established that there was no legal, or legitimate, distinction between and among Movants and Mansell.  Most tellingly, the "Group" marketing brochure entitles itself as only Hartsfield Capital. Mullaney Decl., ¶ 10, Ex. H, at p.1, et seq.  It was available on-line until the time this lawsuit was filed (the attached exhibited was printed off of the internet in pre-suit investigation). Id. It has since disappeared.

The Group brochure also described Messrs. Banzhaf and Reichardt as its officers, and Mr. Morrow as Counsel. Id at § IV.   Although Mr. Banzhaf claimed that he had objected to the inaccurate portrayal of him and Defendant Reichardt as officers of Group as early as 2003, this false marketing brochure remained available and inaccurate until late 2007. Banzhaf Tr. at p.76, li.20 – p.77, li.12; p. 85, li.15-22.   The FINRA BrokerCheck Report also mysteriously repeats this inaccuracy, which reported as of December 6, 2007 that Mr. Banzhaf was an executive of Group. Id. at p.106, li.1 – p.107, li.17; Mullaney Decl., ¶ 11, Ex. I.

Accordingly, Argosy (then HCS) shared a telephone and facsimile line with Group, as part of its apparently unwritten rental agreement. Banzhaf Tr. at p.52, li.7-23.  Group paid Argosy's phone bills, whatever they were, regardless of who Argosy called or for how long. Id.at p.53, li.11-18.  Argosy shared a photocopier with Group, and would not be charged additional rent regardless of the amount of photocopying. Id.

### 1.  Begley's Testimony Shows Viability of Dover's Claims

Defendant Begley could not himself distinguish between Group, Argosy, and Mansell –
referring to it all as "the firm" at one point. Begley Tr., p.15, li.12-25. Mr. Begley later caught
himself referring to Mansell as "we", which he declined or was unable to define further. Begley
Tr., p.69, li.3-9. In the Canadian litigation against Mr. Kerr to which Mr. Begley was referring,
Mr. Begley submitted an Affidavit. Begley Tr., p.71, li.14-19. Although he testified that he
could not remember how he described himself in the Canadian Affidavit, in a draft of it Mr.
Begley described himself as a Vice President and Director of Mansell. Mullaney Decl., ¶12, Ex.
J. The Reasons for Judgment of the Ontario, Canada Superior Court also describes Mr. Begley
as Mansell's Vice President. Mullaney Decl., ¶13, Ex. K.

He also admitted that he at times held himself out as "VP of Business Development" for
"Hartsfield Capital Group"   Begley Tr., p.40, li.11-25.; Mullaney Decl., ¶14, Ex. L.  Later
switching gears, and referring himself merely as a "consultant" for Group, he testified that he
was directing his "consult-ees'" funds to Mansell on behalf of Group. Begley Tr., p. 57, li. 5-18.

In whatever capacity, Mr. Begley admitted that he was paid referral fees for the investors,
or associates as he called them (including Dover), to Mansell.  This came shortly after he had
testified that he had "nothing to do with Mansell."  He further testified that his referral fee
relationship with Mansell was oral, but that he did not know with whom he had made that oral
contract. Nor did he know who the principals of Mansell were, so he claimed. Begley Tr., p. 42,
li.10 – p. 43, li.16. He did not elaborate on how in good conscience he could refer individuals to
an "investment vehicle" he claimed to know so little about.

Mr. Begley also then testified that a Mansell "Unanimous Resolution" bore a signature
that was not actually his, but did closely resemble it. Begley Tr., p.65, li.8-25; Mullaney Decl.,

¶15, Ex. M. This Unanimous Resolution bears the page numbers 79-80, that were applied by the lawyers who produced them, who represent Argosy. Mullaney Decl., ¶ 13.

Messrs. Begley, Lovett, Banzhaf and Reichardt also had unfettered access to the Mansell account and used its funds for a host of purposes inconsistent with any legitimate investment. For example, Mr. Begley directed that Mansell funds be sent to his lawn keeper, Begley Tr., p. 64, li. 14-17, a company called Leather Creation, Begley Tr., p. 51, li. 2-8, and some $100,000 to a company called Sound Design, Begley Tr., p. 51, li. 9-13.

### 2.  Lovett's Testimony Shows Viability of Dover's Claims

Although Mr. Lovett testified that he had no control over Mansell's funds, Mr. Banzhaf testified otherwise. In addition, Mr. Lovett testified that the funds that Group received from Mansell were for administrative services and rent, by an oral arrangement. Lovett Tr., p.14, li.9-24. The sum that Mansell paid to Group, $531,156.95, over the 18 months or so of Mansell's operation stands in stark contrast to the $750 per month that Argosy pays to Group for rent and the same set of services. Banzhaf Tr., p. 59, li.13-25. Moreover, Mansell had no offices, administrators or equipment separate from Argosy, or Group for that matter, and the reason for any additional rent, never mind $30,000 a month for a "company" that was just a bank account, went unexplained.

Moreover, on at least one occasion Group had taken an advance for the rent for its entire office suite from Mansell. Lovett Tr., p.33, li.23-p.34, li.12; Mullaney Decl., ¶16, Ex. N. Defendant Banzhaf had no recollection of this "advance" being repaid. Banzhaf Tr., p.58, li.3-12. Like his co-conspirator Begley, Defendant Lovett testified that somehow his signature had appeared on a document that he was certain he had not signed. Mr. Lovett testified that his electronic signature had mysteriously been applied to a Mansell Board of Directors Resolution

(that also represents Defendant Assemi as a Mansell director). <u>Lovett Tr.</u>, p.59, li 2 – p.60, li. 6; <u>Mullaney Decl.</u>, ¶17, Ex. O.

Mr. Lovett also confidently proclaimed that "there was never a meeting of the members of Mansell []", even though he testified that he was neither a member, nor officer, nor director of Mansell, which might raise a question of his basis for such a statement. <u>Lovett Tr.</u>, p.36, li.9-p.37, li.22. He also testified that he had no access to Mansell documents, <u>Lovett Tr.</u>, p.38, li.11-13., although Defendant Banzhaf testified just the opposite. Mr. Lovett did testify that he was a consultant to Mansell in "some loose sense." <u>Lovett Tr.</u>, p.69, li.8-24. Neither Group nor Lovett produced one page of documents in discovery.

Even Mr. Lovett referred to the enterprise as "Hartsfield Capital" when faced with a document that he authored, which deliberately blurred the lines (if any) between it and Argosy. <u>Lovett Tr.</u>, p.39, li. 7-9; <u>Mullaney Decl.</u>, ¶8, Ex. H. On that document, Mr. Lovett claimed he did not recognize the initials "TRG", who had apparently done the word processing on this document of his. <u>Lovett Tr.</u>, p.40, li.10-15. Mr. Begley, however, testified that TRG was his wife, who was also the secretary for Group. <u>Begley Tr.</u>, p.75, li. 14 – p.76, li.8, li.23-25.

### 3.  Banzhaf's Testimony Shows Viability of Dover's Claims

Like his co-defendants Begley and Lovett, Defendant Banzhaf seemed mystified by the presence of his signature on documents that someone sent to Dover from the "Hartsfield Capital" fax number. <u>Banzhaf Tr.</u>, p.122, li.7 -12; p.124, li.3-25; <u>Mullaney Decl.</u>, ¶18, Ex. P. Even the facsimile legend on the top of Ex. P reads "Hartsfield Capital", without further distinction. Exhibit P is a letter from Mr. Banzhaf on behalf of "Hartsfield Capital Securities" to the May, Davis Group in New York, a New York contact omitted from his Affidavit. Mr. Banzhaf had a clear recollection of the parts another exhibit, the "Unanimous Resolution" that describe

11

Defendants Lovett and Begley as officers of Mansell, but testified that he did not notice the remaining text of the exhibit that describe Argosy's participation in the conspiracy. Banzhaf Tr., p.185, li.10 - p.188, li.6; Mullaney Decl., ¶13, Ex. M.

In fact, upon reviewing this exhibit at his deposition, Mr. Banzhaf made a candid admission that the date it was faxed to Dover was "the date that Steve is trying to say all kinds of things. [] I sent it to Serena (of May, Davis) but that was the different transmission." Banzhaf Tr., p.122, li.11-17. The attorney taking the deposition recalls Mr. Banzhaf saying just before this text "We've got a huge problem", although this was not captured by the court reporter. Mullaney Decl., ¶ 17.

### 4. Mansell Was a Sham Entity, Establishing Liability and Jurisdiction

Mansell, presently the subject of an unopposed motion for default before this Court, was a sham entity, the fraudulent nature of which establishes both liability and jurisdiction against the Movants. Dover's principal, Ms. Wendy Yap, gave uncontroverted testimony describing how the Movants blurred Group and Argosy, as well as Mansell. Declaration of Wendy Yap in Support of Default, ("Yap Decl."), dated July 3, 2008. Attached to her Declaration was a document entitled "Hartsfield Capital Securities, Inc – Project Finance Custodial Responsibilities." Yap Decl., ¶2, Ex. A. Although Mr. Banzhaf testified that he found a copy of this document stored in Mansell's folder on the Group server (it was not produced by any defendant in discovery), he claimed that did not fax it to Ms. Yap. Banzhaf Tr., p.141, li.3 – p.144, li.9. The Project Finance Custodial Responsibilities document bears the same date on the fax legend as "the date that Steve is trying to say all kinds of things." Banzhaf Tr., p.122, li.11-17.

12

Defendant Banzhaf testified that Defendants Lovett and Begley asked him to form Mansell in the first place, which he did. Banzhaf Tr,. at p.8, li.17-23. According to Defendant Banzhaf, Begley and Lovett also owned it. Id., at p.9, li 21-24. Mansell's "single purpose" was to open a bank account through which Defendants Begley and Lovett would move funds. Id., at p.11, li 14-23. Mr. Banzhaf testified that he had no idea why the Mansell bank account was necessary at all, if its "investors" were actually investing with the Kerr Trust. Id., at p. 39, li 2-9.

Only Defendants Lovett and Begley directed the flow of funds from Mansell's account, and Mr. Banzhaf physically carried out their orders by check or wire. Id., at p.13, li 14-25; p.14, li.11-22. For example, Mr. Banzhaf wrote out a Mansell check to "Leather World" for furniture for Defendant Begley's home, Id., at p.48, li 12-21, and some $100,000 to "Sound Design" for stereo equipment for Begley's home. Id., at p.49, li 12-p.50, li.6. Mr. Banzhaf also disbursed funds from Mansell's bank account to Mr. Lovett at his request, in whatever amount he requested. Id., at p.51, li 2-12.

Mansell had no office separate from either Group or Argosy. Id., at p.19, li 3-13. Nor did it have its own fax line, telephone number, domain name, nor did it pay its own light bills. Id., at p.19, li 14-22. There is a "Mansell" folder on the computer server shared by both Group and Argosy, but no one is in charge of it. Id., at p.67, li 8- p.68, li. 10. When communicating with Dover on "Mansell" issues, Defendant Banzhaf used his "Hartsfield Capital Securities" e-mail, including signature block, explaining that "[t]here has never been a separation with Mansell." Id., at p.152, li 8-16

Another recipient of Mansell's largess, in the amount of $100,000, was an entity called "Begley, Banzhaf and Reichardt, LLC." Mullaney Aff., ¶7, Ex. B. Mr. Banzhaf described the purpose of this entity on his FINRA BrokerCheck report as "solely as a bank account to

receive and distribute funds to its partners[.]  With such a limited function, it takes virtually no time in its management." Banzhaf Tr., p.111, li 14 – p.112, li.1; Mullaney Decl., ¶9, Ex. I. When it came time for Mr. Banzhaf to justify the $80,000 over a 16-month period that he was paid for the same "management" of the Mansell bank account that would be performed at Begley, Banzhaf and Reichardt, amount of management time was allegedly considerably greater. Now Mr. Banzhaf claimed that the "management" of the Mansell bank account absorbed five hours a day for 16 months. Banzhaf Tr., p.193, li.12 – p.194, li.11.  Mr. Banzhaf, however, testified that he only distributed fixed (by Mr. Begley) amounts of money to four people each month from the Mansell account, Id., at p.198, li. 21-25, in addition to filling Defendant Begley and Lovett's less regular requests.  Id., at p.199, li.3- 7.  Under examination from his attorney, Mr. Banzhaf testified that this alleged five hours a day of work included sitting around the office and waiting for Mr. Begley and Lovett to appear and ask for money.  Id., at p.204, li 11-15

Defendant Reichardt also testified that he did very little at Mansell, although he did have check-writing authority, and that Defendant Banzhaf performed almost all functions for Mansell. Mullaney Decl., at ¶18, Ex. Q, attaching relevant portions of the Transcript of Deposition of Delbert D. Reichardt, ("Reichardt Tr."), dated July 31, 2008, at p.7, li.6-15.  Nonetheless, he also received some $80,000 for these "administrative services" over the same 16-month period as did Mr. Banzhaf. Id. at p.13, li.19 – p.14, li.1.  Defendant Reichardt also defined these services as "providing support to John." Id. at p.19, li.11-13.

Mr. Reichardt also testified that Argosy (in its previous incarnation) had advanced rent money to Group or Defendant Lovett (he termed them as "synonymous"). Reichardt Tr., p.29, li.21-p.30, li.22.  Defendant Reichardt testified that Mansell existed only as a vehicle through which monies passed, and a "convenience." Id. at p.12, li.1-9.  Moreover, he knew that Mr.

Lovett proudly distributed copies of the Group marketing brochure, with all its falsehoods, and that Mr. Lovett was "always" misrepresenting that Argosy (the broker-dealer) belonged to Group. Id. at p.20, li.16 – p. 21, li. 18.

Finally, Mr. Banzhaf even admitted that he wrote the check from Mansell's account that seeded the bank account of Mansell Capital Partners, III – at the request of Mr. Lovett. Id., at p. 178, li 9- p.179, li.11. Mansell Capital Partners III is a defendant in a civil action brought by the Securities Exchange Commission in Atlanta, Georgia, the allegations in which bear a distinct resemblance to those in this case. That case is entitled Securities and Exchange Commission v. Mansell Capital Partners, III, LLC, et al., Civil Action No. 1:08-Cv-0011-ODE (N.D.Ga.).

## II.    **LEGAL ARGUMENT**

### A. Standard for this Motion

It is well-established that on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a "Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Log On America, Inc. v. Promethean Asset Management L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (citation omitted). Pursuant to this legal standard, Dover need only plead even its fraud claim with sufficient particularity such that Movants are provided with "fair notice" of the factual underpinnings of the claims. *PI, Inc. v. Ogle,* 932 F.Supp., 80, 83 (S.D.N.Y. 1996). "In sum, the motion to dismiss for failure to state a claim is disfavored and is seldom granted." *Log On America, Inc.*, 223 F. Supp.2d at 441 (citation omitted). As the United States Supreme Court recently held, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

**B. Defendants Motion to Dismiss for Lack of Jurisdiction Should Be Denied**

The Motion to Dismiss for based on lack of personal jurisdiction made by Defendant Assemi and other Movants should also be denied. Under C.P.L.R. § 302(a)(1) a Court in New York may exercise personal jurisdiction over a non-domicilary party if (1) it "transacts any business within the state" and (2) the "cause of action arises from" the business contacts. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir.2007); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir.2006). The "transacting business" element requires a defendant to have "purposefully availed himself of conducting activities within New York and thereby invoked the benefits and protections of its laws." Even a single transaction, if purposeful, will confer jurisdiction in New York, if that one transaction bears a substantial relationship to the cause of action. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir.2005); *Energy Brands, Inc. v. Spiritual Brands, Inc.*; --- F.Supp.2d ---, 2008 WL 2747276 (S.D.N.Y.)(DC). This holds true for defendants who transact business within the state in person or through an agent. C.P.L.R § 302(a). Of course, the opposite is true as well, "a corporation can act as an agent of a corporate officer so that its activities here [in New York] can subject the officer to [personal jurisdiction]." *ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.*, 390 F.Supp.2d 212 (E.D.N.Y. 2005).

Next, under C.P.L.R. § 302(a)(2) a party who commits a tortuous act within the state is likewise amenable to New York Jurisdiction. The *Houbigant* Court also noted that "agency is properly found if the corporate entity engaged in purposeful activities within this state in relation to the transaction for the benefit of and with the knowledge and consent of the individual and the individual exercised some control of the corporate entity in the matter." *Houbigant, Inc. v. Development Specialists, Inc.*, 229 F.Supp.2d 208 (S.D.N.Y 2002).

16

The "Hartsfield" of Group's marketing brochure had a New York office, through Defendant Morrow. Group had its Counsel, TJ Morrow, in New York at the time of the Dover investment. Defendant Lovett testified that he had spoken to Morrow about the "funding of transactions" on several occasions. Defendant Begley even testified that Mr. Morrow was the architect of the AA-rated note "program" first offered to Dover. Begley Tr., p.34, li.6-18.

The Movants also first directed Dover's funds to a New York clearing account at the firm of May, Davis, and Assemi knew that he was directing the transfer of Dover's money to May, Davis from another New York company, A.B. Watley. They also transferred hundreds of thousands of dollars of Dover's from the Georgia Mansell account to Assemi's bank in New York. Mansell also sent portions of Dover's money to Belsize's account in New York on repeated occasions, as well as sending sums to Begley's parents in New York.

In phase two of the scheme, Morrow was a still a New York attorney. He and Begley met with Dover representatives and made numerous misrepresentations during this two day series of meetings held in New York. Morrow's attorney escrow account to which he and Begley directed Dover's funds was located in New York, and their theft from that account occurred in New York. Begley also made the misrepresentations of the "Begley-Morrow Theft" while he was an officer of Group – providing an additional basis for personal jurisdiction over Movants.

**C. Defendants' Motion to Dismiss for Failure to State a Claim Should Be Denied**

**1. Elements of Common-Law Fraud Adequately Pled**

Dover's fraud and conspiracy to commit fraud claims satisfy the pleading standards for the Federal Rules of Civil Procedure. At the pleading stage, of course, Dover is not required to establish the substantive elements of its case. The Motion to Dismiss standard specifically

prohibits the type of "weighing the evidence" that Movants ask of the Court. *Vento & Company of New York, LLC v. Metromedia Fiber Network, Inc.*, 1999 WL 147732 (March 18, 1999). The elements of New York common law fraud are also identical to those necessary to plead federal securities fraud, which are also well-pled. *Infra*, p.9.

Specifically, Dover's allegations describe who made the fraudulent statements, the dates and places where the fraudulent statements were made, the manner in which the statements were false, and how Dover relied on those statements. *E.g., M & T Mortgage Company v. United States Department of Housing and Urban Development*, 323 F.Supp.2d 405, 412 (E.D.N.Y. 2004). The Complaint further demonstrates the other necessary element for a fraud claim under state law – that the allegations demonstrate "a strong inference of fraudulent intent" by Movants. *PI, Inc. v. Ogle*, 932 F. Supp. 80, 84 (S.D.N.Y. 1996). Dover can, and does, meet this legal standard by: "(a) alleging facts to show that [Movants] had both motive and opportunity to commit fraud; and (b) by alleging the facts that constitute strong circumstantial evidence of [Movants] conscious misbehavior [and] recklessness." *PI*, 932 F.Supp at 84.

Dover clearly alleges that: 1) Movants represented that Dover's $4 million dollars would be invested in a specific business project involving the purchase of AA-rated bonds; 2) no bonds were ever purchased; 3) Movants promised that the money Dover invested would be insured by a $25mm fidelity bond; 4) Movants promised that Dover's Funds would reside in its attorney's escrow account until an appropriate investment was identified by them; 5) three of the individual defendants falsely represented that they were investors in the same financing project as Dover; 6) Movants promised that Dover's investment was liquid and could be withdrawn at any time; 7) Movants represented that Dover's money would not be invested without Dover's permission; and

8) Movants claimed that Dover's money would only be used for investment purposes and be in a SPIV called Mansell.

### 2.  Securities Fraud Claim Well-Pled Against Movants

To state a cause of action under § 10(b) and Rule 10b-5, plaintiffs must allege that "defendant[s], in connection with the purchase and sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff[s'] reliance on defendant[s'] action cause[d] injury to plaintiff[s]." *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003) (quotation omitted); *see Ganino v. Citizens Utility Co.*, 228 F.3d 154, 161 (2d Cir. 2000).  The Complaint alleges defendants' false statements and omissions with sufficiently particularity.  The Complaint alleges: (i) the specific statements made to Plaintiffs, (ii) who made the statements, (iii) the time the statements were made, and (iv) why the statements were fraudulent when made. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (S.D.N.Y. 1993).  Accordingly, the Complaint gives defendants fair notice of Plaintiffs' claims, and does not needlessly impugn defendants' reputation with improvident charges of wrongdoing. *See, e.g., DiVittoro v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

### a.  The Complaint adequately pleads scienter

"To adequately plead scienter, plaintiff must allege facts to support a strong inference of 'an intent to deceive, manipulate, or defraud.'" *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (HB), 2003 WL 22489764, at *19 (S.D.N.Y. Nov. 3, 2003) (quoting *Ernst & Ernst v. Hochfelder*, 426 U.S. 185, 193 n. 12, 96 S. Ct. 1375, 47 L. Ed.2d 668 (1976)); *see Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001); 15 U.S.C. § 78u-4(b)(2).  "Such intent can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of

conscious misbehavior or recklessness." *Ganino*, 228 F.3d at 168-69 (quotation omitted); *see Shields*, 25 F.3d at 1128.

Pleading "conscious misbehavior or recklessness requires plaintiffs to provide factual allegations that support a strong inference that defendants knew, or had a reasonable basis to know, or recklessly disregarded, that the allegedly fraudulent statements were untrue when made." *In re Vivendi Universal*, 2003 WL 22489764, at *20; *see Novak v Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). Reckless conduct is "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standard of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *See Kalnit*, 264 F.3d at 142.

The Complaint satisfies both definitions of scienter: (a) by alleging facts to show that Movants had both motive and opportunity to commit fraud, and (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

### b. The Complaint adequately alleges motive and opportunity

"Sufficient motive allegations entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *In re Vivendi Universal*, 2003 WL 22489764, at *20 (citing *Kalnit*, 264 F.3d at 139). As described more fully above, Movants obviously had a motive and opportunity to steal Dover's money – they wanted to enrich themselves at the expense of Dover, and did. They designed Mansell to be without any financial controls and be subject to the whims of any or all of Movants.

In Phase II, Begley and Morrow had opportunity to divert Dover's investment in the Insuragift securitization program. Indisputably Defendant Morrow was sent funds for this

program, which he then sent to Begley.  The Complaint clearly alleges that no legitimate services

were performed to justify the dissipation of the funds in that "Attorney Escrow" account, and

that the program was just a ruse.  Begley does not contest that he took a share of this loot, and

Morrow confirmed it

### c.   The Complaint adequately alleges Movants' knowledge or recklessness

The Complaint adequately pleads scienter by alleging facts that support a strong

inference that Movants knew, or had a reasonable basis to know, or recklessly disregarded, that

the allegedly fraudulent statements were untrue when made.  *See In re Vivendi Universal*, 2003

WL 22489764, at *20; *see Novak v Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).  Discovery proved

it.  Movants repeatedly misled Dover as to the nature of its "investment"  Whether characterized

as intentional or reckless, Dover's factual pleadings satisfy the pleading standards of Rule 10b-5.

### d.   The Complaint adequately alleges loss causation and reliance

The Complaint adequately alleges both loss causation and transaction causation.  Dover

would never have invested over $4 million dollars with Movants if they had not lied about the

nature of their business ventures, and or stated that they would help themselves to Dover's funds

at their pleasure.  See *Suez Equity Investors, L.P.*, 250 F.3d at 95-96 (equating loss and

transaction causation with proximate cause and reliance, respectively).

### e.   The Complaint pleads (securities) fraud with sufficient particularity

When construing a motion to dismiss under the Private Securities Litigation Reform Act

(the "PSLRA") "the Court must determine if plaintiffs pled with particularity sufficient facts to

support a reasonable belief as to the misleading nature of the statement or omission." *In re*

*Vivendi Universal*, 2003 WL 22489764, at *1 (citing *In re Initial Public Offering Sec. Litig.*, 241

F. Supp.2d 281, 330 (S.D.N.Y. 2003)); *see Novak*, 216 F.3d at 313-314; 15 U.S.C. § 78u-4(b)(1).

Moreover, the Court must determine if plaintiffs "state[d] with particularity facts giving rise to a strong inference that . . . defendant[s] acted with the requisite state of mind." *In re IPO*, 241 F. Supp.2d at 330; *see In re Vivendi Universal*, 2003 WL 22489764, at *1; 15 U.S.C. § 78u-4(b)(2).

"Under Rule 8, the complaint merely needs to 'afford [the] defendant sufficient notice of the communications complained of to enable him to defend himself.'" *In re Vivendi Universal*, 2003 WL 22489764, at *1 (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)). "[T]he complaint must 'be so construed as to do substantial justice.'" *Id.* (quoting Fed. R. Civ. P. 8(f)). "The facts alleged must be 'simple, concise, and direct.'" *Id.* (quoting Fed. R. Civ. P. 8(e)(1)). "Rule 9(b) adds to the pleading standard of Rule 8, but does not drastically alter it." *Id.* (citing *In re IPO*, 241 F. Supp.2d at 326 (noting that Rules 8's and 9's "pleading requirements only differ in degree, not in kind.")). When fraud is alleged, plaintiffs must allege facts with particularity and particularity, in this context, "means the who, what, when, where, and how: the first paragraph of any newspaper story." *In re IPO*, 241 F. Supp.2d at 327. For the reasons set forth above, that standard has been satisfied.

### f. Both direct and control person liability viable against Begley, Lovett, Banzhaf and Reichardt

"To determine whether a corporate officer should be held personally liable based on fraudulent conduct, the court must make a two-step inquiry." *See Trustees of the Bldg. Svc. 32B-J Pension, Health and Annuity Funds v. Hudson Svc. Corp.*,871 F. Supp. 631, 638 (S.D.N.Y. 1994) (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir.1994)). "First, the court must determine whether the individual is a 'controlling corporate official.' *Id.* (citation omitted). In making this determination, the court must "examine the officer's actual role in the company's affairs and relationship to the company's wrongdoing." *Id.* "Second, the plaintiff must establish the existence of all of the common law elements of

22

fraud, which include: (1) a material false representation or omission of an existing fact; (2) knowledge of the falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages." *Id.* (citation omitted).

In addition, "controlling-person liability" under § 20 of the Securities Exchange Act is a separate inquiry from that of primary liability and provides basis for all of the individual defendants liability. *See Suez Equity Inves. L.P.*, 250 F.3d at 101 (citation omitted). "Controlling-person liability is a form of secondary liability, under which a plaintiff may allege a primary § 10(b) violation by a person controlled by the defendant and culpable participation by the defendant in the perpetration of the fraud." *Id.* (citation omitted).  Group held out Defendants Lovett, Begley, Banzhaf and Reichardt as its officers in its marketing brochure. Defendant Banzhaf identified himself and Defendant Reichardt as Group officers in FINRA filings.  Several Mansell documents identify Lovett, Begley and Assemi as its officers or directors.  Banzhaf and Reichardt admit they are the only ones at Argosy, and are in control there.

### 3. Elements of Conspiracy Adequately Pled

Dover has not sued any Defendant for conspiracy standing alone.  Dover's conspiracy claim is based upon its underlying common law fraud and 10b-5 claims, *inter alia*, and so meets New York's pleading standards. *Morris v. Castle Rock Entertainment, Inc.*, 246 F. Supp.2d 290, 297 (S.D.N.Y. 2003) (stating that "in order for Plaintiffs to have a valid civil conspiracy cause of action, there must be a specific tort upon which they could base their conspiracy claim.").  Under New York law Plaintiff's cause of action for conspiracy to commit fraud serves to connect the acts of each defendant with the acts of his co-conspirators. *See, Litras v Litras*, 254 A.D.2d 395, 681 N.Y.S.2d 545 (2d Dep't 1998); *Hoag v. Chancellor*, 246 A.D.2d 224, 677 N.Y.S.2d 531 (1st

Dep't 1998). Thus, no individual defendant can escape liability for his part in the fraudulent scheme alleged in the Complaint.

### 4. Elements of Unjust Enrichment Adequately Pled

Movants were unjustly enriched by their misconduct because Dover's millions were taken under false pretenses and used for their benefit. The Complaint sufficiently alleges such misconduct, which was confirmed by discovery. Dover, therefore, is entitled to pursue its claims for unjust enrichment against all of the Movants.

The test for determining whether a party has been unjustly enriched is based on "whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Eightway Corp. v. Dime Savings Bank of Williamsburg*, 404 N.Y.S.2d 302 (N.Y. City Civ. Ct. 1978). Unsurprisingly, a party who receives money through a fraudulent scheme or as a result of misfeasance is unjustly enriched under New York law. *Carriafielo-Diehl & Associates, Inc. v. D&M Electrical Contracting, Inc.*, 12 A.D.3d 478 (N.Y.A.D. 2nd Dept. 2004)(finding that a party who received benefit as a result of an embezzlement scheme was unjustly enriched). A person improperly receiving or retaining a benefit from an escrow account also constitutes unjust enrichment. *Podolsky v. Citation Abstract, Inc.*, 279 A.D.2d 559, 561 (N.Y.A.D. 2nd Dept. 2001); *Cohen v. Rothman-Goodman Management*, 155 A.D.2d 579, 581 (N.Y.A.D. 2nd Dept. 1989)(finding plaintiff alleged a viable unjust enrichment claim because the "complaint at bar alleges that the defendants received money from the escrow account, that the money was the property of the escrow depositors and that money was payable in equity and in good conscience to and for the benefit of the escrow agent").

**5.     Dover's Complaint Adequately Pleads Breach of Contract Against Movants**

Dover's Complaint establishes a breach of contract action for purposes of a Rule 12(b) Motion because the "factual allegations" relating to Dover's breach of contract claim "raise a right to relief above the speculative level." *Nicholson v. Tweedy*, 2007 WL 2262912, *1 (E.D.N.Y. Aug. 3, 2007).    To meet this standard, Dover need only plead that: (a) an agreement exists between the parties; (b) Dover adequately performed the agreement; (c) the defendant breached that agreement; and (d) Dover was damaged as a result of the breach. *Nicholson*, 2007 WL 226912, *2; *Streit v. Bushnell*, 424 F.Supp.2d 633, 641 (S.D.N.Y. 2006) (finding that plaintiff's allegations met the pleading standards for a breach of contract claim).    Dover's Complaint satisfies this legal standard, and its basis is sound as established by Movants' own words. Mullaney Decl., ¶3, Ex. A.

The Complaint alleges that Dover entered into a contractual agreement with the conspirators, termed "Hartsfield" in the Complaint because of the confusion they deliberately fostered to thwart any retrieval of funds.    The agreement was to invest Dover's money in a business venture to purchase AA-rated bonds.    Dover sent the money.    None of those bonds were ever purchased.    Instead, Hartsfield used the funds to benefit itself and its co-conspirators through the "convenience" of the Mansell account.    Movant's actions were a breach of that agreement. *Nicholson*, 2007 WL at *1 (holding that plaintiff's "curious argument" that the parties never entered into an agreement involves questions of fact which cannot be determined in a motion to dismiss).

**6.     Dover's Complaint Adequately Pleads Conversion**

Movants' use of Plaintiffs' investment money "to pay customers or creditors of defendant other than plaintiff. . . is sufficient to establish a cause of action for conversion separate and apart

from any breach of contract.." *Key Bank of New York v. Grossi*, 227 A.D.2d 841, 844, 642 N.Y.S.2d 403, 405 (3d Dep't 1996). The basic elements of conversion under New York law are: (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Fabry's S.R.L. v. IFT Int'l, Inc.*, No. 02 Civ. 9855(SAS), 2003 WL 21203405, at *3 (S.D.N.Y. May 21, 2003) (citing *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993)); *Hoffman v. Unterberg*, 9 A.D.3d 386, 388, 780 N.Y.S.2d 617, 619 (2d Dep't 2004) (same). The Complaint satisfies those elements. A plaintiff must also show acts that were unlawful or wrongful as opposed to mere violations of contractual rights. *Fabry's S.R.L.*, 2003 WL 21203405, at *3. Movants' theft is clearly pleaded here.

### 7.    **Dover's Complaint Adequately Pleads Breach of Fiduciary Duty**

Movants breached their fiduciary duty to Dover when they maximized their own self-interest at the expense of Dover, contrary to the duty owned to treat those funds with the highest fidelity. Movants owed that duty by alleging that they would safe-keep Dover's funds in an escrow account, representing that they would be Dover's trustees. They also offered (falsely) to provide investment advisory services beyond what a broker in a non-discretionary account would offer.

Argosy ("HCS") is a broker-dealer that was to use Dover's millions for investing in a joint business venture – which was to invest in AA-rated bonds. As a broker, Argosy owed a fiduciary duty to Dover. *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 510 (2nd Cir. 1994). Argosy breached this duty by using the funds for its officer's self-interest, at the expense of Dover's. *Schruefer v. Winthorpe, Grant, Inc.*, 2003 WL 1108933 (S.D.N.Y. March 12, 2003)(finding that

26

defendant breached its fiduciary duty when it misrepresented the nature of the business investment, converted the plaintiff funds and used the invested funds for its own personal gain).

Also, every one of the Movants owed Dover a fiduciary duty because they represented themselves to be agents acting for Dover. They created a special relationship with Dover by providing it with specific investment advice (although false) upon which they intended for Dover to act, and which it did. *Brown v. Stinson*, 821 F.Supp., 910, 915 (S.D.N.Y. 1992)(entrustment of investment funds). By entrusting its money (for specific investment purposes) to Movants, a fiduciary duty was created between Hartsfield and Dover. "Where money or property is entrusted to [an agent-trustee] for a particular purpose, it is impressed by law with a trust in favor of the principal until it has been devoted to such purpose." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp. 198, 217 (S.D.N.Y. 2002); *quoting Air Traffic Conference v. Downtown Travel Center, Inc.*, 87 Misc.2d 151, 383 N.Y.S.2d 806, 806-07 (1976).

Similarly, Begley owed Dover a fiduciary duty in the "Begley-Morrow Theft" because he Begley was purportedly an agent for Dover during the course of the fraudulent scheme(s), and testified that he had advised Dover to "invest" in Mansell, and later "Insuragift." Begley of course breached this duty by taking Dover's money for his own personal benefit.

The Complaint pleads the existence of this duty, and Movants' breach.

**C.    Southern District of New York is a Proper Venue and a Convenient Forum**

At defendant Assemi's direction, Dover moved its funds from A.B. Watley, in the Southern District of New York, to an account at a New York firm called May, Davis, in the Southern District, which account was under the control of the movants. All of the movants had a role in moving Dover's funds from May, Davis to the Mansell account in Georgia. All of the movants had a role in sending Dover's funds from Georgia back to New York on multiple

occasions.  Mr. Assemi introduced Mr. Mooren (of Belsize), a New York resident, to Begley and Lovett.  Defendant Lovett met Mr. Mooren in the Southern District of New York to discuss this introduction.  Mr. Lovett had also advertised Defendant Morrow as an employee of Group, while Morrow had a New York City office just blocks from this Court.  Those two also had discussed "the funding of transactions" on several occasions.  Defendants Morrow and Begley met two Dover representatives and discussed the subject matter of its Complaint over a two-day period at various locations in the Southern District.  Movants sent some of Dover's funds from the Mansell account to Defendant Assemi's Manhattan bank account, Defendant Begley's New York-resident parents, and Belsize here New York.  Venue is proper in the Southern District of New York.

Plaintiff's choice of forum weighs heavily in a Court's decision to find a forum inconvenient for the defendants.  Defendant Assemi ought to be indifferent to whether this case proceeds in New York or Georgia; he is still allegedly in an undisclosed location within Switzerland.  Defendant Lovett could only make himself available for a deposition in Atlanta on three days' notice because of his busy travel schedule, or so he claimed through his counsel.  Traveling to New York to give testimony would not be inconvenient for such a jet-setter.  Moreover, while the locus of the denials of facts may be in Alpharetta, Georgia, the evidence establishing those facts was developed by third-party subpoenas issued in New York, or reside with Dover.

The Movants have submitted no evidence establishing their self-serving claims of being of limited means.  Mr. Lovett appeared at his deposition wearing a solid-gold Rolex and large gold cufflinks, and was expensively dressed.  Dover's process server had reported that he was difficult to serve because he lives in a gated-community staffed by security.  Mr. Begley was the

28

beneficiary of a $100,000 home stereo paid for by Mansell, among other outlandish gifts. Movants have engaged experienced and no doubt expensive counsel in New York, and also have counsel in Georgia, which seems inconsistent with their claim of limited means. Group and Mr. Lovett have produced no documents in this action, so the location of documents is irrelevant to them. Defendant Begley produced nine pages, which would not seem burdensome to him to send to New York, again.

Although Movants presume there are non-party witnesses in Georgia who would be inconvenienced or unavailable in New York, it cites none. By contrast, Mr. Mooren is a likely non-party witness located in New York, as is David Serena of May, Davis, as is a gentleman named Solomon Weider who sued "Hartsfield Capital" in Brooklyn, New York, as well as bank officers at Mr. Assemi's New York bank, and JPMorgan Chase Bank, where William Kerr evidently had an account, as did two other recipients of funds from Mansell's account, Argyle International and Flexafit International.

Movants presume that Georgia or Delaware law applies to this case, but do not say why. Nor do they say why this is not a securities case, where the Complaint alleges that they falsely claimed that they would buy AA-rated notes with Dover's "investment." While the fact that Movants did not buy one single security with Dover's millions establishes their liability, it does not excuse them from the scope of the securities laws. See *Securities and Exchange Commission v. Mansell Capital Partners, III, LLC, et al.*, Civil Action No. 1:08-Cv-0011-ODE (N.D.Ga.).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny

Movants' Motions to Dismiss and/or Transfer Venue in their entirety.

Dated: New York, New York
      August 18, 2008

                             Respectfully submitted,

                             LAW OFFICES OF THOMAS M. MULLANEY

                             By:    /s/ Thomas M. Mullaney
                                       Thomas M. Mullaney (TM 4274)

                             Attorneys for Plaintiff
                             Dover Limited
                             708 Third Avenue, Suite 2500
                             New York, New York 10017
                             (212) 223-0800