UNITED STATES DISTRCIT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOVER LIMITED

                Plaintiff,

v.

ALAIN ASSEMI, HARTSFIELD CAPITAL
SECURITIES, INC., HARTSFIELD
CAPITAL GROUP, STEPHEN J. LOVETT,
JOHN H. BANZHAF, DELBERT D.
REICHARDT, MANSELL CAPITAL
PARTNERS, LLC, THOMAS O. BEGLEY,
THOMAS O. BEGLEY & ASSOCIATES,
T.J. MORROW, and T.J. MORROW, P.C.

                Defendant.

Civil Action No.
08 CV 1337 (LTS)

**MEMORANDUM OF LAW
FOR DOVER'S RESPONSE
TO DEFENDANT MORROW'S
MOTION TO DISMISS AND FOR
A MORE DEFINITE STATEMENT**

---

**PLAINTIFF DOVER LIMITED'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANTS T.J. MORROW AND T.J. MORROW, P.C.'S MOTION TO DISMISS
AND FOR A MORE DEFINITE STATEMENT**

TABLE OF CONTENTS

Page

TABLE OF CONTENTS..........................................................................................................i

FACTUAL BACKGROUND................................................................................................. 1

    A.   Morrow Stole Dover's Money, and Conspired in Previous Theft By Hartsfield........ 1

LEGAL ARGUMENT............................................................................................................ 3

    A.   Elements of Common-Law Fraud Adequately Pled ........................................... 4

    B.   Securities Fraud Claim Well-Pled Against Morrow............................................ 5

        1.   The Complaint adequately pleads scienter................................................ 6

            a.   The Complaint adequately alleges motive and opportunity ................. 7

            b.   The Complaint adequately alleges defendants'........................................ 7

        2.   The Complaint adequately alleges loss causation and reliance ................. 8

        3.   The Complaint pleads (securities) fraud with sufficient particularity ..................... 8

            a.   Control person liability against Morrow ................................................ 9

    C.   Elements of Conspiracy Adequately Pled.......................................................... 10

    D.   Dover's Complaint Adequately Pleads Breach of Contract ........................ 11

    E.   Morrow Demonstrates No Need for a More Definite Statement................................ 12

CONCLUSION ..................................................................................................................... 13

CERTIFICATE OF SERVICE ........................................................................................... 14

PLAINTIFF DOVER LIMITED'S MEMORANDUM OF LAW IN RESPONSE TO ....... 15

Plaintiff Dover Limited ("Dover") respectfully submits this Memorandum of Law in Opposition to Defendants T.J. Morrow and T.J. Morrow, P.C.'s (together, "Morrow") Motions to Dismiss, and for a More Definite Statement, and would respectfully request that the Motions be denied. Morrow, despite being an attorney still licensed to practice in New York, participated in a conspiracy to abscond with $900,000 of Dover's money, after having assisted the Hartsfield Defendants in a scheme to cover up a previous fraud that had cost Dover $3.25MM. Morrow was also the in-house counsel to Hartsfield Capital Group at the time of that theft of Dover's funds. Morrow plainly committed fraud, participated in a conspiracy to commit fraud, breached his contract with Dover, and violated the federal securities laws. Dover's Complaint provides Morrow with sufficient notice of the factual underpinnings of Dover's claims, and the facts alleged are sufficient to establish such claims under New York law. Morrow's Motion to Dismiss and for a More Definite Statement should, therefore, be denied in their entirety.

## FACTUAL BACKGROUND

### A.   Morrow Stole Dover's Money, and Conspired in Previous Theft By Hartsfield

The Complaint in this action details the theft by Hartsfield of Dover's $3.25mm with adequate specificity. See Complaint of Dover Limited, dated February 11, 2008 ("Complaint") at p.3-9. In the wake of Dover's strenuous objections to Hartsfield's handling of its funds, Defendant Thomas O. Begley, then Hartsfield's Vice President, apologized profusely for Hartsfield's misdeeds, for which he of course was not responsible, and promised that he would get Dover's money back, even if Hartsfield did not. Complaint, at § 41.

Defendant further represented he knew a New York attorney who could assist with recovering Dover's money, either through a new business venture or litigation efforts, or both. Complaint, at § 42, 43. The New York attorney was defendant Morrow; that he had been or was

Case 1:08-cv-01337-LTS-JCF   Document 67   Filed 08/20/2008   Page 4 of 15

also Hartsfield's counsel was never mentioned. Complaint, at § 45. Subsequently, both Morrow and Begley flew from New York to Singapore to discuss their "plan" for recovering the lost millions. While in Singapore, Morrow and Begley discussed the steps that they would take to recover Dover's money. One step discussed was filing a lawsuit against a Canadian lawyer who Begley claimed had participated in the theft of Dover's money.[1] Another step discussed was to form a new business, the "Insuragift" program, which would securitize and sell insurance policy premium. Morrow repeatedly told Dover that he would be its lawyer in establishing the "Insuragift" program. His irreconcilable conflict of interest, given that his previous or present client Hartsfield had stolen those funds that he and Begley now sought to recover or regenerate, did not deter Mr. Morrow. Complaint, at § 43-45. He still agreed to provide his legal expertise to Dover and the business venture, and that he and Begley would make every effort to recover Dover's funds.

Regrettably relying on Morrow's (and Begley's) representations, Dover decided to hire him and transfer $900,000 to his "Escrow & Clients Funds Mgt. Account." Complaint, at § 46. Dover wired these funds to TJ Morrow PC "Attorneys-at-Law" in October 2006. Id. After receipt of these funds, Morrow quickly disbursed $330,000 to his crony Begley, and kept the rest, after expending a token sum to obtain a legal opinion from another law firm, which opinion demonstrated the infeasibility of the Insuragift program--and Morrow even inflated the relatively small fee for that opinion letter in his "accounting" to Dover. Complaint, at § 49-50.

Understandably, Dover began questioning Morrow's expenses in November 2006. Despite having been unable to develop any policies to be securitized, according to Morrow that

---

[1] One of a number of individuals Begley blamed for the loss of Dover's money was a Canadian lawyer whom Begley and Morrow claimed had a professional malpractice insurance policy that would cover the loss of some of Dover's funds.

money was already spent. Even so, Morrow expressed certainty that the business venture would succeed, and that Dover would recover the money it was owed. If only Dover was patient, Morrow claimed, its money would be returned. See Complaint, at § 48.

By this time, Dover was not willing to accept empty promises that the money would be forthcoming. In response to Morrow's incomprehensible activity report, Dover demanded: (i) the return of its money; (ii) a detailed description of where its $900,000 had been spent; and (iii) all documents supporting these payments. Morrow responded with only an e-mail providing a general description of where the money had gone, including approximately $500,000 for his own and Begley's ephemeral services. Defendant Morrow even had the audacity to claim he was owed an additional $100,000. No documents supporting the alleged distributions were provided. Morrow even refused to transfer any of the $313,360 of Dover's money that Morrow himself listed as being in his trust account. Complaint, at § 49-51.

In response, Dover sent two representatives to New York in December 2006 in order to stress the gravity of the situation with both Morrow and Begley. In their meetings, Begley offered still more excuses as to why the project had not been completed, which Morrow parroted. Yet, when Dover requested Morrow return the money allegedly still in his escrow account, Morrow refused. Morrow still refused to even provide Dover with any written documentation supporting the $570,000 in "expenses" he claimed had been incurred. Complaint, at § 51. When it became clear neither Morrow nor Begley would or could explain where the $900,000 had gone, Dover terminated its relationship with them. Dover retained new counsel and sued.

## LEGAL ARGUMENT

### Standard for this Motion

3

It is well-established that on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a "Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Log On America, Inc. v. Promethean Asset Management L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (citation omitted). Pursuant to this legal standard, Dover need only plead its fraud claim with sufficient particularity such that Morrow is provided with "fair notice" of the factual underpinnings of Dover's fraud claim. *PI, Inc. v. Ogle*, 932 F.Supp., 80, 83 (S.D.N.Y. 1996). "In sum, the motion to dismiss for failure to state a claim is disfavored and is seldom granted." *Log On America, Inc.*, 223 F. Supp.2d at 441 (citation omitted). As the United States Supreme Court recently held, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

### A.   Elements of Common-Law Fraud Adequately Pled

Dover adequately pleads its fraud and conspiracy to commit fraud claims against Morrow. New York law, despite Morrow's suggestion to contrary, simply does not require that Dover prove, at this stage, the substantive elements of its case. In fact, the Motion to Dismiss standard specifically prohibits the type of "weighing the evidence" that Morrow attempts to do. *Vento & Company of New York, LLC v. Metromedia Fiber Network, Inc.*, 1999 WL 147732 (March 18, 1999). The elements of New York common law fraud are also identical to those necessary to plead federal securities fraud. *Infra*, p.9.

Specifically, Dover's allegations describe who made the fraudulent statements, the dates and places where the fraudulent statements were made, the manner in which the statements were false, and how Dover relied on those statements. *M & T Mortgage Company v. United States Department of Housing and Urban Development*, 323 F.Supp.2d 405, 412 (E.D.N.Y. 2004). The

4

Complaint further demonstrates the other necessary element for a fraud claim under state law – that the allegations demonstrate "a strong inference of fraudulent intent" by Morrow. *PI, Inc. v. Ogle,* 932 F. Supp. 80, 84 (S.D.N.Y. 1996). Dover can, and does, meet this legal standard by: "(a) alleging facts to show that [Morrow] had both motive and opportunity to commit fraud; and (b) by alleging the facts that constitute strong circumstantial evidence of [Morrow's] conscious misbehavior [and] recklessness." *PI*, 932 F.Supp at 84.

Specifically, Morrow promised that i) the Insuragift funds would only be used for the purpose of pooling, securitizing and selling policy premium-backed securities, and that ii) all disbursements would be subject to Dover's approval. Morrow made these statements during his Summer of 2006 meeting in Singapore, and ratified them in later discussions with Dover's representatives in New York in December of 2006. When Dover requested an itemized documentation of how its $900,000 had been spent, Morrow refused to do give one, and he refused to provide any supporting documents for these "expenses". In fact, Morrow even refused to return money that he told Dover was still in his escrow account. Dover's Complaint more than adequately meets its pleading standard for fraud.

**B.     Securities Fraud Claim Well-Pled Against Morrow**

To state a cause of action under § 10(b) and Rule 10b-5, plaintiffs must allege that "defendant[s], in connection with the purchase and sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff[s'] reliance on defendant[s'] action cause[d] injury to plaintiff[s]." *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003) (quotation omitted); *see Ganino v. Citizens Utility Co.*, 228 F.3d 154, 161 (2d Cir. 2000). The Complaint alleges defendants' false statements and omissions with sufficiently particularity. The Complaint alleges: (i) the specific statements made to Plaintiffs, (ii) who made the statements,

5

(iii) the time the statements were made, and (iv) why the statements were fraudulent when given. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (S.D.N.Y. 1993). Accordingly, the Complaint gives defendants fair notice of Plaintiffs' claims, and does not needlessly impugn defendants' reputation with improvident charges of wrongdoing. *See, e.g., DiVittoro v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

### 1.  The Complaint adequately pleads scienter

"To adequately plead scienter, plaintiff must allege facts to support a strong inference of 'an intent to deceive, manipulate, or defraud.'" *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (HB), 2003 WL 22489764, at *19 (S.D.N.Y. Nov. 3, 2003) (quoting *Ernst & Ernst v. Hochfelder*, 426 U.S. 185, 193 n. 12, 96 S. Ct. 1375, 47 L. Ed.2d 668 (1976)); *see Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001); 15 U.S.C. § 78u-4(b)(2). "Such intent can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Ganino*, 228 F.3d at 168-69 (quotation omitted); *see Shields*, 25 F.3d at 1128.

Pleading "conscious misbehavior or recklessness requires plaintiffs to provide factual allegations that support a strong inference that defendants knew, or had a reasonable basis to know, or recklessly disregarded, that the allegedly fraudulent statements were untrue when made." *In re Vivendi Universal*, 2003 WL 22489764, at *20; *see Novak v Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). Reckless conduct is "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standard of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *See Kalnit*, 264 F.3d at 142.

6

The Complaint satisfies both definitions of scienter: (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, and (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

### a. The Complaint adequately alleges motive and opportunity

"Sufficient motive allegations entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *In re Vivendi Universal*, 2003 WL 22489764, at *20 (citing *Kalnit*, 264 F.3d at 139). Morrow has an obvious motivation to hide his connection to Hartsfield from Dover; he wanted the opportunity to steal more of its money. He was also plainly motivated to deflect Dover's attention from seeking recompense from Hartsfield; he (and his friend Begley) worked there, unbeknownst to Dover. His motivation in conjuring up a fictitious "Insuragift" securitization program, and in misusing his attorney's escrow account, is the same. These misstatements were made for the purpose of separating Dover from its money, Dover relied upon them, and suffered the result.

### b. The Complaint adequately alleges defendants' knowledge or recklessness

The Complaint adequately pleads scienter by alleging facts that support a strong inference that defendants knew, or had a reasonable basis to know, or recklessly disregarded, that the allegedly fraudulent statements were untrue when made." *See In re Vivendi Universal*, 2003 WL 22489764, at *20; *see Novak v Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). At the very least, it was reckless for Morrow to advertise his ability to consummate a complicated securities program; especially when the first building block of such a venture, an attorney's opinion letter, established the program as impossible -- $900,000 later.

7

### 2.   The Complaint adequately alleges loss causation and reliance

The Complaint adequately alleges both loss causation and transaction causation by alleging, that but for Morrow's misrepresentations and omissions, Plaintiff would not have invested its money with defendants.  Next, as a result of their reliance on Morrow's misrepresentations and omissions, Plaintiff lost approximately $900,000.  See *Suez Equity Investors, L.P.*, 250 F.3d at 95-96 (equating loss and transaction causation with proximate cause and reliance, respectively).

### 3.   The Complaint pleads (securities) fraud with sufficient particularity

When construing a motion to dismiss under the Private Securities Litigation Reform Act (the "PSLRA") "the Court must determine if plaintiffs pled with particularity sufficient facts to support a reasonable belief as to the misleading nature of the statement or omission." *In re Vivendi Universal*, 2003 WL 22489764, at *1 (citing *In re Initial Public Offering Sec. Litig.*, 241 F. Supp.2d 281, 330 (S.D.N.Y. 2003)); *see Novak*, 216 F.3d at 313-314; 15 U.S.C. § 78u-4(b)(1). Moreover, the Court must determine if plaintiffs "state[d] with particularity facts giving rise to a strong inference that . . . defendant[s] acted with the requisite state of mind." *In re IPO*, 241 F. Supp.2d at 330; *see In re Vivendi Universal*, 2003 WL 22489764, at *1; 15 U.S.C. § 78u-4(b)(2).

"Under Rule 8, the complaint merely needs to 'afford [the] defendant sufficient notice of the communications complained of to enable him to defend himself.'" *In re Vivendi Universal*, 2003 WL 22489764, at *1 (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)). "[T]he complaint must 'be so construed as to do substantial justice.'" *Id.* (quoting Fed. R. Civ. P. 8(f)). "The facts alleged must be 'simple, concise, and direct.'" *Id.* (quoting Fed. R. Civ. P. 8(e)(1)). "Rule 9(b) adds to the pleading standard of Rule 8, but does not drastically alter it." *Id.* (citing *In re IPO*, 241 F. Supp.2d at 326 (noting that Rules 8's and 9's "pleading requirements

only differ in degree, not in kind."). When fraud is alleged, plaintiffs must allege facts with particularity and particularity, in this context, "means the who, what, when, where, and how: the first paragraph of any newspaper story." *In re IPO*, 241 F. Supp.2d at 327. For the reasons set forth above, that standard has been satisfied.

### a. Control person liability against Morrow

"To determine whether a corporate officer should be held personally liable based on fraudulent conduct, the court must make a two-step inquiry." *See Trustees of the Bldg. Svc. 32B-J Pension, Health and Annuity Funds v. Hudson Svc. Corp.*, 871 F. Supp. 631, 638 (S.D.N.Y. 1994) (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir.1994)). "First, the court must determine whether the individual is a "controlling corporate official." *Id.* (citation omitted). In making this determination, the court must "examine the officer's actual role in the company's affairs and relationship to the company's wrongdoing." *Id.* "Second, the plaintiff must establish the existence of all of the common law elements of fraud, which include: (1) a material false representation or omission of an existing fact; (2) knowledge of the falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages." *Id.* (citation omitted).

In addition, "controlling-person liability" under § 20 of the Securities Exchange Act is a separate inquiry from that of primary liability and provides basis for Morrow's culpability. *See Suez Equity Inves. L.P.*, 250 F.3d at 101 (citation omitted). "Controlling-person liability is a form of secondary liability, under which a plaintiff may allege a primary § 10(b) violation by a person controlled by the defendant and culpable participation by the defendant in the perpetration of the fraud." *Id.* (citation omitted). Hartsfield advertised Morrow as its in-house counsel on its web-site, and did so at all times relevant to this Complaint. His co-conspirator

9

Begley was likewise an officer at Hartsfield, and the two continued the scheme to defraud while still at Hartsfield, even while using the "Insuragift" ruse.

### C. Elements of Conspiracy Adequately Pled

Dover's conspiracy claim is well-pled, and cannot be dismissed if either its 10b-5 claim or common law fraud claims against Morrow survive. *Morris v. Castle Rock Entertainment, Inc.*, 246 F. Supp.2d 290, 297 (S.D.N.Y. 2003) (stating that "in order for Plaintiffs to have a valid civil conspiracy cause of action, there must be a specific tort upon which they could base their conspiracy claim."). Under New York law Plaintiff's cause of action for conspiracy to commit fraud serves to connect the acts of each defendant with the acts of his co-conspirators. *See Litras v Litras*, 254 A.D.2d 395, 681 N.Y.S.2d 545 (2d Dep't 1998); *Hoag v. Chancellor*, 246 A.D.2d 224, 677 N.Y.S.2d 531 (1st Dep't 1998). Thus, no individual defendant can escape liability for his part in the fraudulent scheme alleged in the Complaint.

Morrow's mischaracterization of Dover's conspiracy allegations as being for conspiracy, standing alone, cannot save him. Dover is suing Morrow for fraud and for his participation in a fraudulent conspiracy. In fact, in a similar case, the Appellate Division held that:

> "The complaint charges [the attorney] made deliberate misrepresentations to third parties, an assertion which, if proven true, supports a finding that he participated in the perpetration of a fraud. The cause of action against [the attorney] must therefore stand, for the allegations of conspiracy serve to connect his conduct with an otherwise actionable tort."

*Factory Point National Bank v. Wooden Indian, Inc.*, 198 A.D.2d 563 (3rd Dept. 1993).

Morrow both committed the independent tort of fraud, and he was part of a conspiracy to both steal Dover's money and to prevent Dover from pursuing its underlying claims against Hartsfield and the other defendants.

**D.    <u>Dover's Complaint Adequately Pleads Breach of Contract</u>**

Dover's Complaint establishes a breach of contract action for purposes of the legal standard necessary under Rule 12(b). Morrow's Motion to Dismiss should be denied because the "factual allegations" relating to Dover's breach of contract claim "raise a right to relief above the speculative level." *Nicholson v. Tweedy*, 2007 WL 2262912, *1 (E.D.N.Y. Aug. 3, 2007). To meet this standard, Dover need only plead that: (a) an agreement exists between the parties; (b) Dover adequately performed the agreement; (c) Morrow breached that agreement; and (d) Dover was damaged as a result of Morrow's breach. *Nicholson*, 2007 WL 226912, *2; *Streit v. Bushnell*, 424 F.Supp.2d 633, 641 (S.D.N.Y. 2006) (finding that plaintiff's allegations met the pleading standards for a breach of contract claim). Dover's Complaint satisfies this legal standard

Dover's Complaint provides that Morrow agreed to render the necessary legal (and then business) services to create the "Insuragift" program, and to assist with the recovery of the millions of dollars that were wrongfully taken from Dover. Dover retained Morrow for this purpose, as evidence by its sending $900,000 to his "Escrow & Clients Funds Mgt. Account." Additionally, Dover and Morrow discussed retaining Morrow to provide such legal services when he flew to Singapore in 2006. Rather than use the funds for the agreed upon purposes, Morrow used the funds for his own personal benefit and for his co-conspirator Begley. Morrow breached his contract with Dover by engaging in these acts. Dover lost $900,000 as a direct result of Morrow's breach of contract. Dover, therefore, has more than adequately met the pleading standard for pursuing a breach of contract claim under New York law. *Nicholson*, 2007 WL at *1 (holding that plaintiff's "curious argument" that the parties never entered into an agreement involves questions of fact which cannot be determined in a motion to dismiss).

E. <u>**Morrow Demonstrates No Need for a More Definite Statement**</u>

As Defendant Morrow correctly states, a motion for a more definite statement is available if the Complaint is so vague or ambiguous that he cannot frame a responsive pleading. Fed.R.Civ.P. 12(e). The second, fifth, and seventh causes of action of the Complaint, however, are not in that category. Morrow simply confuses Dover's pleading obligations with its eventual evidentiary burden.

The text of the Complaint is quite clear that Morrow owed a fiduciary duty to Dover as its lawyer, which he violated by stealing or squandering its funds, and by failing to reveal that he was Hartsfield's in-house counsel. Complaint, ¶ 64. That sequence is not ambiguous to any reasonable reader. Morrow certainly knows whether these allegations are true or not, and should say so in an Answer.

The Unjust Enrichment and Conversion claims are equally uncomplicated, and require no further elaboration either. The Complaint plainly alleges that Morrow kept some or all of the $4,150,000 of Dover's money, from the "Insuragift" funding and otherwise, and that it would offend equity and good conscience for him to retain it or any portion of it. The Conversion claim alleges the existence of a discrete pool of assets, maintained in Morrow's own Escrow account, and that he misappropriated it for his own use. A denial of those fact allegations fall peculiarly within Morrow's own knowledge; which knowledge he tellingly declines to share, for reasons other than indefiniteness.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants T.J. Morrow and T.J. Morrow, P.C.'s motions in their entirety.

Dated: New York, New York
      August 20, 2008

                      Respectfully submitted,

                      LAW OFFICES OF THOMAS M. MULLANEY

                      By:  /s/ Thomas M. Mullaney
                            Thomas M. Mullaney (TM 4274)
                      Attorneys for Plaintiff
                      Dover Limited
                      708 Third Avenue, Suite 2500
                      New York, New York 10017
                      (212) 223-0800