UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DOVER LIMITED,

    Plaintiff,

-v-                                          No. 08 Civ. 1337 (LTS)(JCF)

T.J. MORROW and TJ MORROW, P.C.,

    Defendants.

-------------------------------------------------------x



## MEMORANDUM ORDER

        Plaintiff Dover Limited ("Dover" or "Plaintiff") brings this action against Tyron Jon Morrow and T.J. Morrow P.C., a one-person inactive law firm (collectively, "Morrow" or "Defendants"), for breach of contract, breach of fiduciary duty, fraud, violations of section 10(b) of the Securities Exchange Act of 1934, unjust enrichment and conversion in connection with an unrealized business venture. Defendants have moved for summary judgment. The Court has considered carefully the parties' submissions and, for the following reasons, Defendants' motion is granted in part and denied in part.

### BACKGROUND

        The following facts are undisputed except as otherwise indicated.[1] Dover commenced financial dealings in 2003 with Hartsfield Capital Securities ("Hartsfield"). (Def.'s 56.1 St. ¶ 1.) Dover then discovered that Hartsfield had made false representations about its

---

[1] Facts recited as undisputed are identified as such in the parties' statements pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective S.D.N.Y. Local Civil Rule 56.1 statements ("Def.'s 56.1 St.") and responses thereto ("Pl.'s 56.1 St.") incorporate by reference citations to the underlying evidentiary submissions.

investment activities, and Dover sued Hartsfield for the return of $3,250,000. (Id. ¶ 3.) Thomas Begley was a Hartsfield employee at the time the Hartsfield fraud was uncovered but, expressing remorse for what had happened to Dover, he proclaimed his independence from Hartsfield and proposed to Dover a business venture by which it could earn back the money that it had lost. The formation of this new venture, named "Insuragift," is the focus of the instant dispute.

Begley and Morrow traveled to Singapore in July of 2006, where they met Wendy Yap and Conrad Seah, a Dover director and former director, respectively, to pitch the Insuragift venture. (Morrow's June 14, 2010, Affidavit in Support of Motion for Summary Judgment ("June 14 Morrow Aff.") ¶ 2.) Dover has alleged that Begley and Morrow proposed that "the two of them and Dover form a joint venture to purchase certain types of life insurance policies and then securitize and sell the premium payments." (Wendy Yap's Decl. in Opp. to Mot. for Summ. J. ("Yap Decl.") ¶ 2; Conrad Seah's Decl. in Opp. to Mot. for Summ. J. ("Seah Decl.") ¶ 2.) Dover further alleges that it accepted Begley and Morrow's offer to become a one-third partner in the Insuragift project. (Yap Decl. ¶ 4; Seah Decl. ¶ 4.) In its brief in opposition to the instant motion, Dover argues that its agreement with Morrow was an oral contract. (Pl.'s Mem. of L. in Opp. to Mot. for Summ. J. 16.) Morrow, by contrast, contends that he accompanied Begley to Singapore solely to explain how the venture would work. (June 14 Morrow Aff. ¶ 6.) Morrow alleges that he never executed any contracts with Dover (Def.'s 56.1 St. ¶ 20), and that, contrary to Dover's description of the venture, Insuragift was proposed as:

> a program that pools term life insurance policies, so that the insurance premiums are inexpensive, sets up a premium payment system to pay for the term policies and over time insureds in an aged group of 52 and older should pass away in such numbers, due to natural mortality, to justify the initial purchase of the insurance policy pool.

(June 14 Morrow Aff. ¶¶ 8-9).

Dover also alleges that Morrow served as an attorney for either Dover or Insuragift and has proffered a document captioned:

> Attorney Work Product File # 10
> Attorney: TJ Morrow . . . .
> Client: Ambrose Investment Trust-Proposal for Closing & Trust Structure Reorganization
> Attorney-Client Name: TB, WY, CS (privileged)

(Decl. of Thomas M. Mullaney in Opp. to Mot. for Summ. J. ("Mullaney Decl.") Exh. E.) Dover alleges that the letters "TB, WY, CS" refer to Thomas Begley, and, for Dover, Wendy Yap and Conrad Seah. Morrow denies that he ever served as an attorney for Dover. (Morrow's March 30, 2010, Affidavit ("March 30 Morrow Aff.") ¶ 4.)

It is undisputed that, subsequent to the July 2006 meeting, Dover and Begley entered into an agreement titled a "Liability Assumption and Working Capital Agreement" ("Loan Agreement") in connection with Insuragift, whereby Begley agreed to compensate Dover for the $3,250,000, which was owed by Hartsfield, and Dover agreed to lend $900,000 to Thomas O. Begley & Associates to implement the Insuragift venture. (Def.'s 56.1 St. ¶¶ 4,7; Pl.'s 56.1 St. ¶¶ 4,7.) Morrow was not a party to the loan agreement. (Def.'s 56.1 St. ¶¶ 4; Pl.'s 56.1 St. ¶¶ 4.)

The Loan Agreement called for Dover to wire the $900,000 loan in two installments to:

> TJ Morrow, PC
> Attorneys-at-Law
> Escrow & [C]lient Funds Mgt Account
> JP Morgan Chase
> Account No. [initial digits redacted] . . . 23-65

(Loan Agreement § VII (b).) Dover alleges that it relied, in part, on the account being an attorney escrow account, to allay fears that the funds might be misappropriated. (Id. ¶ 8.) Dover

further alleges that "Morrow . . . agreed . . . that Dover was to be informed of and approve all expenses of Insuragift, before they occur[r]ed." (Yap Decl. ¶ 6; Seah Decl. ¶ 6.) Morrow contends, however, that the account was not an attorney escrow account but, rather, an "exit" account. (Def.'s 56.1 St. ¶ 11.) JP Morgan Chase states that it has no record of offering an "exit" account, and account statements from JP Morgan Chase indicate that the account was titled an "Escrow and Client Funds Management Account" from October 25, 2003 to August 23, 2006. (Mullaney Decl. Exh. D.)

Dover alleges that it wired $900,000 to Morrow's account. (Yap Decl. ¶ 5.) Morrow's account statements show that Dover wired $450,000 into the account on October 3, 2006, and that someone named Piet Yap wired another $450,000 to the account on August 28, 2008. (Mullaney Decl. Exh. D.) Morrow asserts that "Mr. Yap is not a party to this action . . . [so] no claim is in evidence for [the $450,000 that was wired in August.]" (June 14 Morrow Aff. ¶ 5.) No other deposits were made to the account between October 25, 2003, and April 17, 2007, aside from a $20 deposit on July 3, 2006. (Mullaney Decl. Exh D.)

In November 2006, Dover "contacted Begley and Morrow about the status of both the business venture and the funds," asserting that Begley and Morrow "had already missed an interest payment." (Compl. ¶ 47.) The Insuragift venture never materialized, and Dover did not receive its money back. The parties do not dispute that Morrow disbursed to himself $300,000 of the $900,000 as a "structuring fee." (Def.'s 56.1 St. ¶ 14.) In addition, Dover has proffered evidence that Morrow disbursed to himself approximately $100,000 as legal fees and expenses. (Mullaney Decl. Exh. P. "Law Office Accounting to Complete Engagement.") A significant portion of the funds were disbursed to Thomas Begley and other entities. (Id.) Morrow asserts that these were legitimate expenses authorized by Begley who, having been

loaned the funds pursuant to the Loan Agreement, had authority to authorize such disbursements. (Def.'s 56.1 St. ¶ 18.) According to Morrow, the Insuragift project failed because Begley did not provide actuarial data that was crucial to the creation of the Insuragift investment model. (Deft.'s 56.1 St. ¶ 21.)

Dover claims that Morrow withheld material information that would have discouraged Dover from participating in the Insuragift venture, such as the fact that Morrow had served as Hartsfield's attorney. (Yap Decl. ¶ 4; Seah Decl. ¶ 4.) Dover has proffered printouts of Hartfield's corporate webpage listing Morrow as Hartsfield's attorney. (Mullaney Decl. Exh. I.) Morrow acknowledges that he was involved in business activities with a Hartsfield principal prior to the Insuragift venture, but he claims that he was never Hartsfield's attorney and that the text on Hartsfield's website indicating otherwise is a "fabrication." (June 14 Morrow Aff. ¶ 15.) Morrow. Dover also claims that Morrow withheld a document drafted by outside counsel explaining that the Insuragift venture was probably illegal in each state of the United States of America.

Morrow is the only remaining Defendant in this action, as Dover's claims against the other defendants have been dismissed or transferred to another judicial district.

## DISCUSSION

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). For the purposes of summary judgment, a fact is material "if it 'might affect the outcome of the suit under the governing law.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)

(quoting Anderson, 477 U.S. at 248). "A factual dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id.

The Morrow defendants seek summary judgment dismissing the claims against them (Counts I through VII of the Complaint[2]), arguing that Plaintiffs' evidentiary proffers are insufficient to raise genuine issues as to the viability of those claims.

Counts IV and V – Breach of Contract and Unjust Enrichment Claims

Plaintiff has brought claims against Morrow for breach of an oral contract (Count IV) and for unjust enrichment or quasi-contract (Count V). "[A] plaintiff may proceed upon a theory of quasi-contract as well as breach of contract" where there is "a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue." Hochman v. LaRea, 14 A.D.3d 653, 654-55 (N.Y. App. Div. 2005).

Morrow alleges that there was no contract, oral or written, between himself and Dover. He also asserts that, because there was a written contract between Dover and Begley regarding the loan of $900,000, Plaintiff may not proceed upon a quasi-contract claim in addition to its breach of contract claim. Morrow's assertion is unavailing because there is a genuine dispute as to whether, in addition to the Loan Agreement between Dover and Begley, a separate oral agreement existed among Dover, Morrow and others, regarding the Insuragift venture. (Yap Aff. ¶ 4; Seah Aff. ¶ 4.)

Morrow also asserts that, even if such an oral agreement existed, it was unenforceable because the statute of frauds requires written evidence of contracts for the sale of

---

[2] Count III is brought against only Hartsfield and Hartsfield Group, the claims against which have been severed and transferred to the United States District Court for the Northern District of Georgia (see docket entry nos. 87 and 88). Accordingly, the sufficiency of Count III is not addressed in this opinion.

goods of $500 or more. See N.Y. U.C.C. § 2-201(1). This argument is inapposite, as the alleged agreement was for the provision of services and the creation of a business, not a sale of goods. Accordingly, the motion for summary judgment dismissing Plaintiff's breach of contract claim against Morrow will be denied.

As for the unjust enrichment claim, Morrow asserts it should be dismissed because the "defendants were not enriched as [they] went about setting up the Insuragift program." (Def.'s Mem. in Support 19.) By this, it seems, Morrow means that he and others spent the money that had come from Dover on legitimate expenses tied to the creation of Insuragift rather than keeping the money for themselves. Morrow, however, admits that he disbursed $300,000 to himself as a "structuring fee" and approximately $100,000 to himself as legal fees and expenses. Further, the extent to which the disbursements made by Morrow and Begley of the money they received from Dover were for legitimate expenses of the Insuragift project is a disputed fact; it is also disputed whether Morrow had proper authority to disburse the funds from his escrow account, even for Insuragift expenses. These disputes preclude dismissal of the unjust enrichment claim on a summary judgment motion. Dover will thus be permitted to proceed with its claims for breach of contract and, in the alternative, unjust enrichment.

Count I – Common Law Fraud Claim

Under New York law, the five elements of a fraud claim are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock and Co., 443 F.3d 230, 234 (2d Cir. 2006). Here, the parties dispute whether Morrow knowingly misrepresented his past relationship with Hartsfield; whether Morrow and Begley truly intended to establish the Insuragift venture; and

whether Morrow withheld material information regarding the legality or illegality of the Insuragift venture for the purpose of defrauding Dover. These are genuine issues of material fact that preclude dismissal of Dover's fraud claim on a motion for summary judgment.

Count II – Fiduciary Breach Claim

Dover alleges that Morrow owed it a fiduciary duty in its capacity as Dover's attorney or as the attorney to the newly formed Insuragift venture. Dover also asserts that, as a result of the deposit of its funds into an account denominated as the Morrow firm's "escrow" account, Morrow owed Dover fiduciary duties with respect to disbursements from that account.

Morrow asserts that the Court should grant summary judgment dismissing the aspect of this claim that is premised on Morrow's alleged service as an attorney to Dover or Insuragift because "[t]he record shows that Morrow has not ever represented himself or any associated company to be Dover's attorney." (Def.'s Mem. of L. in Opp. 17.) Whether Morrow served as an attorney to Dover or Insuragift is a disputed material fact. Dover has proffered signed affidavits from Dover's director Wendy Yap and former director Conrad Seah, attesting that Morrow agreed to serve as "a partner in and attorney to the Insuragift program." (Yap Decl. ¶ 24; Seah Decl. ¶ 24.) Dover has also proffered a document, alleged to have been created by Morrow, and labeled "Attorney Work Product File #10" and indicating the "Attorney-Client Name" as "TB, WY, CS (Privileged)," presumably referring to Thomas Begley, Wendy Yap and Conrad Seah. (Mullaney Decl. Exh. E.) The dispute over whether Morrow served as an attorney to Dover or Insuragift is, in light of these proffers, a genuine one and, thus, summary judgment will not be granted as to this aspect of Dover's claim.

Morrow also asserts that the Court should grant summary judgment dismissing the aspect of this claim related to Morrow's bank account because, pursuant to the Loan

Agreement, the funds wired into that account belonged to Begley, not Dover, and because the account was not an escrow account.

Construing the facts in the light most favorable to Dover as the non-moving party, the record could support a reasonable determination that the funds belonged to Dover unless and until Morrow transferred the funds to Begley at Dover's instruction. The Loan Agreement provided that Dover would transfer $900,000 to Morrow's escrow account in two installments. The Loan Agreement did not, however, indicate unambiguously that transfer of possession from Dover to Morrow would trigger transfer of ownership from Dover to Begley. Dover has proffered two affidavits alleging that Dover maintained authority over the funds such that Morrow agreed to obtain Dover's approval before disbursing any portion of the funds for Insuragift expenses, and an affidavit alleging that Morrow offered to receive the funds in his escrow account to allay Dover's fears that the funds would be misappropriated. This evidence provides some further support for the proposition that the funds continued to belong to Dover subsequent to the transfer of possession to Morrow. In addition, Dover has proffered evidence that Morrow's account was, in fact, an escrow account, including JP Morgan Chase account statements showing that the title of the account was "Escrow and Client Funds Management Account." (Mullaney Decl. Exh. E.) Thus, genuine disputes of material fact preclude summary judgment dismissing this aspect of Dover's claim.

Defendant also argues that Plaintiff's fiduciary duty claims cannot lie because Plaintiff has made no showing of deceitful intent. The parties dispute whether deceitful intent is a required element of a claim for breach of fiduciary duty. Compare Flickenger v. Harold C. Brown & Co., 947 F.3d 595, 599 (2d Cir. 1991), with Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC, 376 F. Supp. 2d 385, 414-15 (S.D.N.Y. 2005). However, for the current

motion, the legal question is not material, as Plaintiff has made proffers sufficient for a reasonable jury to find that Morrow did have deceitful intent, including evidence that Morrow knew that the Insuragift venture, as originally structured, would likely violate the laws of the states in which Insuragift was intended to conduct business but withheld this information from Dover. Accordingly, the motion for summary judgment of Plaintiff's claim for breach of fiduciary duty will be denied.

Conversion (Count VII)

"Conversion is the exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." Citadel Mgt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000). Under New York law, "money . . . may be the subject of a conversion action" if it is "held in a specific, identifiable fund and subject to an obligation to return or otherwise treat in a particular manner the specific fund in question." Id. (citation and internal punctuation omitted). However, "an action for conversion cannot lie where damages are merely sought for breach of contract," including a contract for a loan. Id. at 148.

Morrow moves for summary judgment dismissing the conversion claim, asserting that it is precluded by Dover's breach of contract claim and that the money in question was no longer a specific, identifiable fund to which Dover had legal title or superior right once it had been lent to Begley. As indicated above in the context of the fiduciary breach claim, a material dispute exists as to whether Dover maintained ownership of the funds after they were wired to Morrow. Thus, construing the facts in the light most favorable to the non-moving party, a reasonable factfinder could determine that Dover had legal title to any funds that it wired to Morrow and that remained in Morrow's account or were disbursed from that account without

Dover's approval. While in Morrow's account, the funds remained specific and identifiable. Further, Morrow disbursed the funds without Dover's approval despite an alleged obligation to obtain such approval before making disbursements. Accordingly, summary judgment dismissing Dover's conversion claim will be denied.

Dover's conversion claim is not precluded by its breach of contract claim against Morrow, as the subject matter of Dover's alleged oral contract with Morrow (a partnership to establish Insuragift) is different from the subject matter of the conversion claim (the misappropriation of funds over which Dover claims it retained control). In addition, because Dover may not ultimately succeed on its breach of contract claim, Dover may pursue both theories of liability at this stage in the litigation.

Section 10(b) of the Securities Exchange Act and Rule 10b-5 of the Securities and Exchange Commission (Count VI)

To state a claim under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, a plaintiff must allege that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff." Lawrence v. Cohn, 325 F.3d 141, 147 (2d Cir. 2003) (citation omitted). "In order to bring an action for damages under § 10(b), the plaintiff must be an <u>actual</u> purchaser or seller of a security . . . [or have a] contract to purchase or sell a security (such as a put, option, or call) . . . ." Id. (emphasis added) (citations omitted). Here, Plaintiff alleges that Morrow made false statements and omissions in connection with the Insuragift venture and asserts that, because that venture was intend to make money through the sale of securities, Morrow's misstatements were "in connection with" the sale of securities. However, Insuragift never actually sold any securities to

investors, neither did it buy any. The agreement that Dover alleges existed between itself and Morrow was a contract to start a business venture that would attempt to sell securities but it was not itself one for the sale or purchase of securities. Because the alleged misconduct was not in connection with an actual sale or purchase of securities or a contract to sell or purchase securities, Morrow is entitled as a matter of law to summary judgment dismissing Plaintiff's claims for securities fraud.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment dismissing Plaintiff's claim for violation of section 10(b) of the Securities Exchange Act and Rule 10b-5 of the Securities and Exchange Commission (Count VI of the Complaint) is granted. Defendants' motion is denied in all other respects. This Memorandum Order resolves docket entry number 102.

The parties are directed to meet with Magistrate Judge Francis promptly for settlement purposes.

A final pretrial conference will be held before the undersigned on **Friday, January 20, 2012, at 12:00 noon.** The parties must confer and make their submissions in advance of the final pretrial conference as specified in the May 2, 2008, Pre-trial Scheduling Order (docket entry no. 15).

SO ORDERED.

Dated: New York, New York
September 28, 2011

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge